**SOUTHWEST INDUSTRIES INVESTMENT COMPANY, INC., and Faye Hiller, Appellants,**

v.

**BERKELEY HOUSE INVESTORS, A Partnership, Appellee.**

**No. 05–84–00873–CV.**

Court of Appeals of Texas, Dallas.

June 10, 1985.

Rehearing Denied July 29, 1985.

Ben K. Krage, Kasmir, Willingham & Krage, Dallas, for appellants.

James A. Cline, Dallas, for appellee.

Before SPARLING, ALLEN and MALONEY, JJ.

ALLEN, Justice.

Southwest Industries Investment Co., Inc. and Faye Hiller (Southwest and Hiller) appeal from a judgment rendered against them and in favor of Berkeley House Investors (Berkeley House) for breach of contract and conversion. Southwest and Hiller raise three points of error, which assert: (1) that the evidence conclusively established that the Berkeley House partnership had no contract claims against Southwest and Hiller, (2) that the evidence established as a matter of law that there was no conversion, and (3) that there was no evidence to support the trial court's finding of fact that appellants acted with malice and, thus, no evidence to support the award of exemplary damages to Berkeley House. We conclude that all of these points of error are without merit and, accordingly, affirm the judgment of the trial court.

The individual partners of Berkeley House purchased the Berkeley House apartments from Southwest in 1979, each of them taking an undivided interest in the property. (The Berkeley House partnership did not come into being until after the purchase). Hiller was secretary-treasurer, a director, the only shareholder, chairman of the board, and chief executive officer of Southwest. The contract of sale provided that Southwest would pay taxes on the property prorated to the closing date. The closing was on July 11, 1979. Dennis Pennell, who acted as attorney-in-fact for the other purchasers at the closing, testified that he told Hiller at the closing that the purchasers would form the partnership and contribute their undivided interests in the apartments to the partnership. Pennell also testified that Hiller told him that she had a special escrow account for taxes and that she wanted to collect money for the taxes for the rest of 1979 and for subsequent years along with payments on the note for the property. She would then put the money for taxes in her escrow account and continue to pay the taxes herself. Pennell testified that he agreed to this arrangement.

After the closing, Berkeley House sent checks to Southwest monthly as payments on the note for the property. The checks were large enough also to cover taxes due on the property. Berkeley House put a notation on each check showing how much of the check was payment for the property and how much was payment for the taxes. Southwest accepted these checks but did not deposit any part of them to a special escrow account for taxes. Instead, Hiller herself admitted that she deposited the checks to Southwest's general account.

Later, Southwest assigned the note it had received on sale of the apartments to First Federal Savings and Loan. Hiller testified that First Federal told her that it would pay the taxes. Southwest then, according to Hiller's own testimony, used the money that it had received for taxes for its own everyday business expenses. First Federal later demanded that Southwest pay the taxes, but Southwest did not pay. First Federal then notified Berkeley House that Southwest had failed to pay. Berkeley House sent a letter to Southwest demanding that Southwest pay the taxes. Southwest still did not pay. Hiller admitted in her testimony at trial that there was not enough money left in Southwest's general account at the time of trial to pay the

taxes. First Federal finally paid the taxes itself. Berkeley House reimbursed First Federal for its tax payments, plus interest. A First Federal official stated in deposition testimony that if Berkeley House had not reimbursed First Federal, he would have recommended to the First Federal Board of Directors that it accelerate the note and foreclose on the property.

Berkeley House sued Southwest and Hiller, and the parties tried the case without a jury. The trial court (in conclusion of law 13) held that Southwest and Hiller were liable for breach of the contract of sale because of their failure to pay the 1979 prorated taxes. It also found that Southwest and Hiller had misapplied and converted the money designated for taxes which Berkeley House had included in its monthly payments to Southwest. Finally, it found that in converting and misapplying Berkeley's funds, Southwest and Hiller acted with malice. The trial court accordingly awarded to Berkeley House the amount of the prorated taxes, the allegedly converted part of the monthly payments and $5,000 in exemplary damages.

Southwest and Hiller's first point of error is that the trial court erred in rendering judgment for Berkeley House because the evidence conclusively established that Berkeley House had no contract claims against Southwest and Hiller. Southwest and Hiller argue that Berkeley House could not have a contract claim against them because it never actually had a contract with them. According to Southwest and Hiller, their contract was with the individuals who formed the Berkeley House partnership, and not with the partnership itself. Thus, they say, Berkeley House had no right to sue them on any contract.

■■■ Southwest and Hiller's complaint essentially is that Berkeley House is suing in the wrong capacity. A party who wishes to contest his opponent's capacity to sue must do so through a verified plea under TEX.R.CIV.P. 93. A party who fails to raise the issue of capacity through a verified plea waives that issue at trial and on appeal. *Biggs v. Garrett*, 651 S.W.2d 342, 343 (Tex.App.—El Paso 1983, no writ). We overrule the first point of error.

■■■ In their second point of error, Southwest and Hiller contend that the evidence established as a matter of law that there was no conversion. We disagree. An action will lie for conversion of money when identification of the money is possible and there is a breach of an obligation to deliver the specific money in question or to otherwise treat specific money. *Jones v. Hunt*, 74 Tex. 657, 658, 12 S.W. 832, 833 (1889); *Houston National Bank v. Biber*, 613 S.W.2d 771, 774 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). When a person has designated a particular use for proceeds from a check, those proceeds count as "specific money," capable of identification. *Houston National Bank*, 613 S.W.2d at 775. Thus, that portion of the proceeds from the Berkeley House checks to Southwest which Berkeley House designated for tax payments was specific money, capable of identification and capable of conversion.

Southwest and Hiller insist that there was no conversion because Berkeley made no demand for return of the money. According to Southwest and Hiller, demand for return of the property and refusal of the demand is essential to any cause of action for conversion. There are, however, exceptions to the "demand and refusal" requirement. *Meadow v. Wagner*, 70 S.W.2d 794, 799 (Tex.Civ.App.—El Paso 1934, writ dism'd). Assuming, without deciding, that a demand and refusal was necessary in this case, we hold that Berkeley House's demand that Southwest pay the taxes constituted a demand for return of the property. Berkeley House's demand that Southwest pay the taxes was a demand that Southwest return the money to the purpose which Berkeley House had designated. It was thus essentially a demand that Southwest return the money to Berkeley House's dominion and control. Since Southwest refused to honor that demand, there was a demand and refusal in this case. We overrule Southwest and Hiller's second point of error.

**618**

Southwest and Hiller's third point of error asserts that there was no evidence to support the trial court's finding that Southwest and Hiller acted maliciously and thus no evidence to support the award of exemplary damages to Berkeley House. Southwest and Hiller claim that First Federal agreed to pay the taxes when it bought Southwest's note. They imply that this alleged agreement cuts against any finding that they acted maliciously. However, even if First Federal had assumed the responsibility to pay the taxes, Southwest and Hiller had no right to put the money dedicated for taxes into their general account and use it to pay everyday business expenses. Hiller's admission that she treated the money in this way was in itself sufficient evidence to support the trial court's finding of "gross indifference [to] or reckless disregard for Berkeley's rights." Southwest and Hiller's refusal to pay the taxes even after they had learned that First Federal would not pay the taxes and after Berkeley House had demanded of Southwest and Hiller that *they* pay the taxes is still more evidence of gross indifference to or reckless disregard for Berkeley House's rights. We overrule the third and final point of error.

Affirmed.