INTERMARKETS U.S.A., INC., and Raman Mullick, Appellants,

v.

C-E NATCO, A DIVISION OF COMBUSTION ENGINEERING, INC., Appellee.

No. 01–87–00458–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 20, 1988.

Randolph C. Henson, Farley, Klaus, Smith & Biela, Houston, for appellants.

Marc D. Murr, Bracewell & Patterson, Houston, for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

## OPINION

EVANS, Chief Justice.

This is a suit for damages for the wrongful conversion of a specified sum of money.

The plaintiff, C–E Natco, a division of Combustion Engineering, Inc., sued Intermarkets U.S.A., Inc. and Raman Mullick to recover the sum of $284,045.50, representing the purchase price of a steam generator that Natco had sold to Intermarkets, plus shipping charges. Mullick was the president and owner of 90% of the shares of Intermarkets. Under the terms of the sale, Mullick, on behalf of Intermarkets, assigned $278,825 of the proceeds of a letter of credit issued by Kuwait Oil Company, and that amount plus shipping charges amounts to the total sum of $284,045.50. A successor stand-by letter of credit was eventually paid to Intermarkets, but Intermarkets did not pay any amount to Natco, which then brought this suit.

The case was submitted to a jury, which found that Intermarkets owed Natco the sum of $284,045.50; that Natco had substantially performed its contract; and that Natco should be awarded $17,000 as attorney's fees. On this appeal, Intermarkets does not challenge these findings, and challenges only the findings related to the issue of conversion. Intermarkets contends there could be no conversion, as a matter of law, and that there was no evidence or insufficient evidence to support the jury's finding on the conversion issue.

In points of error one, four, and five, Intermarkets contends that there could have been no conversion as a matter of law. This contention is evidently based on the assumption that Natco's action was for the conversion of the steam generator. This assumption is incorrect. Both at trial and on this appeal, Natco has maintained that Intermarkets wrongfully retained a specific sum of money belonging to Natco, i.e., the proceeds of the letter of credit. Thus, the conversion action was based on the wrongful retention of the specific sum of money or its proceeds, i.e., the money paid on the stand-by letter of credit.

 Where a party breaches an obligation to deliver a specific, identifiable sum of money, an action for conversion of money will lie. See *Southwest Indus. Inv. Co. v. Berkeley House Investors*, 695 S.W.2d 615, 617 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *see also Houston Nat'l Bank v. Biber*, 613 S.W.2d 771 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Here, Natco's suit was based upon its claim of ownership of a specified, identifiable sum of money, which Intermarkets wrongfully retained and converted to its own use. Natco alleged and proved an action for conversion of money.

We accordingly overrule points of error one, four, and five.

In the second and third points of error, Intermarkets contends that there was no evidence or insufficient evidence to support the jury's finding on special issues four through nine, which were submitted as follows:

### Special Issue No. 4

Do you find from a preponderance of the evidence that Defendant Intermarkets

U.S.A. Inc. converted property, or its proceeds, of CE Natco?

Instruction re: "Conversion": In this regard, you are instructed that a conversion as used in this charge means the wrongful exercise of dominion and control over another's property, or its proceeds, in denial of or inconsistent with his rights. A conversion may occur from the unauthorized and wrongful control, wrongful acquisition or wrongful withholding of the property, or its proceeds, of another which is to his exclusion or inconsistent with his ownership rights. Fraudulent intent or purpose is not required for conversion. You are further instructed that recovery is not barred by the Defendants' showing good faith or that the Plaintiffs were indebted to the Defendant.

Answer: We Do.

If you have answered Special Issue No. 4 "We do," and only in that event, then answer:

## Special Issue No. 5

Find from a preponderance of the evidence the fair market value, if any, of the property, or its proceeds, which were converted by Defendant Intermarkets U.S.A. Inc.

Answer: $284,045.50

If you have answered Special Issue 4 "We do," and only in that event, then answer:

## Special Issue No. 6

Do you find from a preponderance of the evidence that the conversion you have found in Special Issue No. 4 was in bad faith or committed in circumstances showing that the Defendant acted in conscious disregard for the rights of those who would be affected by it? In this regard, you are instructed that when a person or entity knows or should have known that it had no legal right to take, acquire or retain the property, or its proceeds, of another, ill-will or bad faith may be implied from the knowing conversion of another's property without a legal right thereto.

Answer: We Do

If you have answered Special Issue No. 6 "We do," and only in that event, then answer:

## Special Issue No. 7

What sum of money, if any, should be assessed against Defendant Intermarkets U.S.A. Inc. as exemplary damages?

Instruction re: "Exemplary damages": In this regard, you are instructed that "exemplary damages" means an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount you may have found as actual damages, and may include compensation for inconvenience, expenses of litigation, and reasonable attorneys' fees.

Answer: $50,000

If you have answered Special Issue No. 4 "We do," and only in that event, then answer:

## Special Issue No. 8

Do you find from a preponderance of the evidence that Raman Mullick directed or participated in the conversion that you found in Special Issue No. 4 during his employment with Intermarkets U.S.A. Inc.?

Answer: We Do

If you have answered Special Issue No. 8 "We do," and only in that event, then answer:

## Special Issue No. 9

What sum of money, if any, should be assessed against Defendant Raman Mullick as exemplary damages?

Instruction re: "Exemplary damages": In this regard, you are instructed that "exemplary damages" means an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount you may have found as actual damages, and may include compensation for inconvenience, expenses of litigation, and reasonable attorneys' fees.

Answer: $ 0.00

■ Intermarket's president, Mullick, admitted at trial, in questioning by both his own attorney and Natco's attorney, that he executed an assignment to Natco of $278,825 of the proceeds of the $323,000 letter of credit. The document assigning the specified sum was introduced into evidence and was signed by Mullick. Mullick testified that he received $323,000 payment on the successor stand-by letter of credit. He testified that he put all this money into his business operations, paid salaries and other expenses, and made investments. He admitted that, as president of Intermarkets, he had made the decisions regarding the use of the money "with consultation of other people...." He also admitted that he had received letters of demand from Natco and that he had not paid the money to Natco. The purchase order, invoice, assignment, and letters of demand were introduced into evidence.

■ Mullick's testimony, together with the supporting documentation, was sufficient to support the jury's finding that there was a conversion, that the conversion was in bad faith, that exemplary damages were warranted, and that Mullick had directed or participated in the conversion. *See Southwest Industries*, 695 S.W.2d at 618. The documents introduced into evidence were sufficient to support the jury's finding that the fair market value of the property converted was $284,045.50.

Because Special Issue No. 9 has no impact on the judgment and is not discussed in Intermarkets' brief, we do not discuss the point here.

We overrule points of error two and three.

In a counterpoint of error, Natco contends that the trial court erred in denying its request for equitable interest for bad faith retention of the specific fund in question.

In its original petition and first supplemental petition, Natco asked for "prejudgment interest at the highest legal rate," and the trial court awarded 6% prejudgment interest. For the first time on appeal, Natco asks for 12% prejudgment interest.

■ To complain of a judgment on appeal, an appellee must bring those errors to the trial court's attention in some manner. *W.H. McCrory & Co. v. Contractors Equip. & Supply Co.*, 691 S.W.2d 717, 721 (Tex.App.—Austin 1985, writ ref'd n.r.e.). Accordingly, we overrule the appellee's counterpoint of error.

The judgment of the trial court is affirmed.