**R & R WHITE FAMILY LIMITED PARTNERSHIP, Appellant,**

v.

**Rodney D. JONES, Appellee.**

No. 06–04–00135–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 14, 2005.

Decided Jan. 10, 2006.

Stephen T. Arnold, Attorney At Law, Texarkana, for appellant.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

The R & R White Family Limited Partnership (R & R) has appealed from a take-nothing judgment. In the initial lawsuit, R & R sued Rodney D. Jones. Jones then sued Robert White, individually, in a cross-action. In a bench trial, the court concluded that, based on the fraudulent and unlawful behavior of the parties, neither side deserved to win and that, in any event, the damages claimed by one were offset by the damages claimed by the other. Jones has not appealed.

Based on a finding that White was the proper party in interest—and that he had not brought suit against Jones—the trial court concluded that R & R was not the proper party in interest to bring the claims. The court then reviewed the issues raised at trial, and based on detailed findings of fact, concluded that White and Jones were in a fiduciary relationship, that the "putative" sale of certain properties was tax fraud, that R & R's claims were barred by fraud, estoppel, and unclean hands, that any partnership damages were offset by Jones' damages, and that both White and Jones violated the "clean hands" doctrine and should not receive a benefit from their conduct.

The lawsuit was based on a series of three realty transactions where Crown

Leasing, Inc.,[1] sold three properties[2] to Jones for a total of $800,000.00, with a side agreement that Jones would later sell the properties to White, individually (and Jones would receive $100,000.00 for his efforts). The "sale" was structured so that Crown had a loss for tax purposes and could increase its tax return (by over $400,000.00). White testified that the properties were valued on the tax rolls at approximately $3,000,000.00. In the midst of these transactions, Crown was involved in several class-action lawsuits (and was apprehensive about its ability to survive) and went through bankruptcy proceedings.[3]

The eventual resale of these properties is somewhat more convoluted. Jones sold the Quail Creek Ranch property—at White's insistence—directly to a separate individual. Before this sale could be consummated, White had to pay off an outstanding judgment against Jones. It appears the proceeds from the sale of the ranch were placed into an account under White's control. Jones, however, became liable for a $96,000.00 federal tax on the transaction because the sale was in his name. Apparently, Jones simply acted as a conduit for the majority of the funds, but paid taxes on the entirety of the gain on the sale.

The trial court found that the resale of the other two properties was to White's son, Patrick.

White contended in the trial court that, based on several other transactions set out below, and because of his satisfaction of a judgment for Jones, Jones owed him $242,833.96. Jones claimed that, based on a series of transactions, including the tax set out above, White owed Jones money in approximately the same amount.

The "LaSalle" investments account was also a part of the various disputed transactions between White and Jones. The testimony concerning this account, however, is very sparse. That testimony suggests that White or R & R initially funded this account with about $350,000.00, using Jones as the account holder for the purpose of facilitating Jones' purchase of the judgment in one of the class-action lawsuits against White (or one of his businesses). Jones testified that "LaSalle" was a d/b/a under his name and that, ultimately, more than $600,000.00 was paid for the judgment from this account. Jones feared the Internal Revenue Service might wonder why he abruptly had an account with that much money in it that simply appeared and then disappeared. He speculated that this account might cause him to become liable for unpaid taxes and penalties. White testified Jones "decided he needed some of that money [from this account], so he just cut him a check for $30,540.00." Jones testified he and White "commingled" money in that account and did not deny he received funds from that account for his own personal benefit, but claimed to have no way of knowing how much.

Another transaction related to the sale of the properties involved the purchase of cattle. Jones testified that White had a class-action lawsuit pending against him (White) in federal court and that White needed to shelter enough money to address that lawsuit. White and Jones pur-

---

1.  White testified that he owned 95% of the stock in Crown; however, an exhibit indicates he owned 100% of the stock.

2.  The three properties are described as: the Moores Lane Building, Quail Creek Ranch, and Landco Development (Whispering Hills).

3.  Ultimately, Crown's chain of stores was sold to Rent–A–Center, Inc.

chased an unspecified number of cattle for an unspecified amount of money, but Jones' testimony is clear that he lost $200,000.00 as a result, and that he had lost that money by doing White the favor of setting up the cattle operation as a tax shelter. Although not clear from the testimony, it appears some of the money from the Quail Creek Ranch sale was also funneled into the cattle operation to protect that sale from tax consequences.

There was also evidence that White and Jones, together, had a stock trading account that worked on margin trading and that they had lost a large amount of money when the stocks failed to perform as anticipated. Counsel has not directed us to any concrete evidence about amounts lost.

The first question we must address is whether the court correctly determined R & R was not the proper party to bring this lawsuit.

### Standing/Capacity

■■■ A plaintiff must have both standing and capacity to bring a lawsuit. *Coastal Liquids Transp. L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001). The general test for standing in Texas requires that there (1) shall be a real controversy between the parties, which (2) will be actually determined by the judicial declaration sought. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex.1996) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993)). Standing pertains to a person's justiciable interest in a suit and is a component of subject-matter jurisdiction. *See Tex. Air Control Bd.*, 852 S.W.2d at 443, 445–46. A controversy is justiciable only if there exists a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995).

■■■ A party has capacity to sue when it has legal authority to act, regardless of whether it has a justiciable interest in the controversy. *Nootsie, Ltd.*, 925 S.W.2d at 661. Capacity is a party's legal authority to go into court to prosecute or defend a suit. *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 249–50 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Capacity must be challenged by a verified pleading, or it is waived. TEX.R. CIV. P. 93; *see Pledger v. Schoellkopf*, 762 S.W.2d 145, 145–46 (Tex.1988) (contention that corporation rather than plaintiff shareholder owned fraud and tortious interference claims challenged capacity to sue and was waived); *Spurgeon v. Coan & Elliott*, 180 S.W.3d 593, 597 (Tex.App.-Eastland, 2005, no pet. h.); *Southwest Indus. Inv. Co. v. Berkeley House Investors*, 695 S.W.2d 615, 617 (Tex.App.-Dallas 1985, writ ref'd n.r.e.).

### Analysis

R & R first contends the court erred by concluding it was not a proper party to the action. Its argument is not based on the merits, but on an alleged procedural shortfall. R & R contends the court could not find it was not a proper party to the suit because Jones did not file a verified answer disputing its capacity to sue.

R & R is correct in stating that the rule requires a party to complain about a lack of capacity with a verified denial. TEX.R. CIV. P. 93. However, the rule goes on to provide that a verified pleading is not required when the truth of the matter appears in the record. *Id.* This is based on the concept that a party could provide evidence at the trial affirmatively showing it was not the party in interest, when that might not be apparent from the pleadings.

### Preservation

Jones initially argues waiver of the waiver, because R & R failed to object or

otherwise complain to the court when Jones first raised this issue in his motion for a directed verdict. Jones' contention is correct. The requirement to use a verified pleading to raise this issue is a procedural matter, required by rule, and complaints about pleadings may be waived if a complaint is not promptly raised by the aggrieved party. TEX.R. CIV. P. 90 ("Every defect, omission or fault in a pleading ... which is not specifically pointed out by exception in writing and brought to the attention of the judge ... shall be deemed to have been waived ...."); *see Burks v. Yarbrough*, 157 S.W.3d 876, 879 n. 1 (Tex. App.-Houston [14th Dist.] 2005, no pet.).

Even if the rule controlled, however, it is not applicable to this argument. As framed before the Court, this is not an issue of the entity's capacity to bring suit, but of its possession of a justiciable interest in the lawsuit, i.e., standing.

*Standing*

■ Standing implicates a court's subject-matter jurisdiction and cannot be waived. *Nootsie, Ltd.*, 925 S.W.2d at 662. The court's findings and conclusions show it concluded that R & R was not the aggrieved party, but that White was the one with the justiciable interest. The question, therefore, is whether a real controversy existed between R & R and Jones that would be determined by the judicial declaration sought, i.e., whether R & R has standing; not whether it has the legal authority to act and therefore has the capacity to sue. *See id.* at 661.

■ Standing is a component of subject-matter jurisdiction and may be raised at any time. *Tex. Air Control Bd.*, 852 S.W.2d at 445–46; *Antonov v. Walters*, 168 S.W.3d 901, 904 (Tex.App.-Fort Worth 2005, pet. denied). A party's standing to pursue a cause of action is a question of law, and we apply a de novo standard of review to the trial court's determination

regarding standing. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Emmett Props., Inc. v. Halliburton Energy Servs., Inc.*, 167 S.W.3d 365, 371 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). An appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Templeton v. Dreiss*, 961 S.W.2d 645, 656 n. 8 (Tex.App.-San Antonio 1998, pet. denied).

R & R attacks the conclusion of law; it does not, however, argue evidentiary sufficiency as to this contention. The evidence reflects that, at some point, White's advisors created a plan to protect White's assets from possible creditors. In that plan, Crown's remaining assets were transferred to an entity called Equichase Limited, a limited partnership described by White as "the main entity that owns the assets of the family." R & R was set up as the general partner of Equichase. Thus, the question is: Did R & R have standing, as the general partner of Equichase, to bring suit?

Generally, except as provided by the Limited Partnership Act, or a partnership agreement, a general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners. TEX.REV.CIV. STAT. ANN. art. 6132a–1, § 4.03(a) (Vernon Supp.2005). A partnership may sue or be sued in the partnership name—and a partner may individually sue for the benefit of the partnership and other partners. *See* TEX.R. CIV. P. 28; *Chien v. Chen*, 759 S.W.2d 484 (Tex.App.-Austin 1988, no writ); 57 TEX. JUR. 3D *Parties* § 14 (1997); 57 TEX. JUR. 3D *Partnerships* § 242 (1997).

■ The more specific question in the instant case is: Did Equichase, through its general partner R & R, or did R & R separately, have standing to bring this lawsuit as alleged?

The trial court specifically found that the action as set out was personal to White and was not one belonging to the partnership(s). There was evidence that White personally instigated the transactions, that he personally transferred the properties, that he personally set out the requirements for resale, and that he personally demanded sale and resale in accord with the terms of their oral and written agreements. It is also apparent that, at the time of the initial transactions in issue, the real estate properties were under the legal ownership of Crown.

The written agreement with Jones, however, does not require sale back to a corporation, or to a partnership (either limited or otherwise). It explicitly requires Jones to sell the properties described "back to ROBERT WHITE at a fair profit within two years from the date of this AGREEMENT, the profit not to exceed $100,000.00."

In its finding of fact number 18, the trial court found that White was the proper party plaintiff and that there was no evidence the "arrangement" was legally and properly assigned to the plaintiff named in the lawsuit and that the two properties not sold from "the property" (the three real estate properties involved) were conveyed back, not to the named plaintiff, but to Patrick White, White's son. The court found there was also a claimed personal loss on stock investments, but nothing that illustrated the account, no partnership agreement, and no agreement defining the responsibilities of the parties.

■ R & R contends that, because family assets were ultimately placed into Equichase, the cause of action was necessarily transferred as well. To recover under the theory that a cause of action was assigned to another party, the party claiming the assigned rights must prove that the cause of action was in fact assigned. *Ceramic Tile Int'l, Inc. v. Balusek,* 137 S.W.3d 722, 724 (Tex.App.-San Antonio 2004, no pet.); *Exxon Corp. v. Pluff,* 94 S.W.3d 22, 28 (Tex.App.-Tyler 2002, no pet.); *Tex. Farmers Ins. Co. v. Gerdes,* 880 S.W.2d 215, 217 (Tex.App.-Fort Worth 1994, writ denied).

There is no testimony or documentary evidence that the cause of action was in fact assigned, or even that its existence was ever acknowledged. There was testimony about the completely personal nature of the transaction, and about the manner in which the property was actually transferred pursuant to the personal agreement, and documentary evidence that the properties were to be transferred not to an assignee, or to a partnership, but to White.

Accordingly, applying a de novo review as required, from the pleadings and evidence presented to the court, we conclude the trial court's conclusion of law that R & R was not the proper party is supported by the evidence that R & R had no justiciable interest in the lawsuit, and that there is not conclusive proof to the contrary. Thus, it had no standing to bring this lawsuit, and the trial court correctly so held.

## Conclusion

In light of the fact that Jones did not appeal, this analysis disposes of the appeal, and we find it unnecessary to address the remaining points of error brought by R & R.

We affirm the judgment.