In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00135-CV
______________________________


R & R WHITE FAMILY LIMITED PARTNERSHIP, Appellant
 
V.
 
RODNEY D. JONES, Appellee


                                              

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 01C0795-102


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N
          The R & R White Family Limited Partnership (R & R) has appealed from a take-nothing judgment. In the initial lawsuit, R & R sued Rodney D. Jones. Jones then sued
Robert White, individually, in a cross-action. In a bench trial, the court concluded that,
based on the fraudulent and unlawful behavior of the parties, neither side deserved to win
and that, in any event, the damages claimed by one were offset by the damages claimed
by the other. Jones has not appealed.
          Based on a finding that White was the proper party in interest—and that he had not
brought suit against Jones—the trial court concluded that R & R was not the proper party
in interest to bring the claims. The court then reviewed the issues raised at trial, and based
on detailed findings of fact, concluded that White and Jones were in a fiduciary
relationship, that the "putative" sale of certain properties was tax fraud, that R & R's claims
were barred by fraud, estoppel, and unclean hands, that any partnership damages were
offset by Jones' damages, and that both White and Jones violated the "clean hands"
doctrine and should not receive a benefit from their conduct. 
          The lawsuit was based on a series of three realty transactions where Crown
Leasing, Inc.,


 sold three properties


 to Jones for a total of $800,000.00, with a side
agreement that Jones would later sell the properties to White, individually (and Jones
would receive $100,000.00 for his efforts). The "sale" was structured so that Crown had
a loss for tax purposes and could increase its tax return (by over $400,000.00). White
testified that the properties were valued on the tax rolls at approximately $3,000,000.00. 
In the midst of these transactions, Crown was involved in several class-action lawsuits (and
was apprehensive about its ability to survive) and went through bankruptcy proceedings.


 
          The eventual resale of these properties is somewhat more convoluted. Jones sold
the Quail Creek Ranch property—at White's insistence—directly to a separate individual. 
Before this sale could be consummated, White had to pay off an outstanding judgment
against Jones. It appears the proceeds from the sale of the ranch were placed into an
account under White's control. Jones, however, became liable for a $96,000.00 federal
tax on the transaction because the sale was in his name. Apparently, Jones simply acted
as a conduit for the majority of the funds, but paid taxes on the entirety of the gain on the
sale. 
          The trial court found that the resale of the other two properties was to White's son,
Patrick.
          White contended in the trial court that, based on several other transactions set out
below, and because of his satisfaction of a judgment for Jones, Jones owed him
$242,833.96. Jones claimed that, based on a series of transactions, including the tax set
out above, White owed Jones money in approximately the same amount. 
          The "LaSalle" investments account was also a part of the various disputed
transactions between White and Jones. The testimony concerning this account, however,
is very sparse. That testimony suggests that White or R & R initially funded this account
with about $350,000.00, using Jones as the account holder for the purpose of facilitating
Jones' purchase of the judgment in one of the class-action lawsuits against White (or one
of his businesses). Jones testified that "LaSalle" was a d/b/a under his name and that,
ultimately, more than $600,000.00 was paid for the judgment from this account. Jones
feared the Internal Revenue Service might wonder why he abruptly had an account with
that much money in it that simply appeared and then disappeared. He speculated that this
account might cause him to become liable for unpaid taxes and penalties. White testified
Jones "decided he needed some of that money [from this account], so he just cut him a
check for $30,540.00." Jones testified he and White "commingled" money in that account
and did not deny he received funds from that account for his own personal benefit, but
claimed to have no way of knowing how much. 
          Another transaction related to the sale of the properties involved the purchase of
cattle. Jones testified that White had a class-action lawsuit pending against him (White)
in federal court and that White needed to shelter enough money to address that lawsuit. 
White and Jones purchased an unspecified number of cattle for an unspecified amount of
money, but Jones' testimony is clear that he lost $200,000.00 as a result, and that he had
lost that money by doing White the favor of setting up the cattle operation as a tax shelter.
Although not clear from the testimony, it appears some of the money from the Quail Creek
Ranch sale was also funneled into the cattle operation to protect that sale from tax
consequences. 
          There was also evidence that White and Jones, together, had a stock trading
account that worked on margin trading and that they had lost a large amount of money
when the stocks failed to perform as anticipated. Counsel has not directed us to any
concrete evidence about amounts lost.
          The first question we must address is whether the court correctly determined R & R
was not the proper party to bring this lawsuit.
Standing/Capacity
          A plaintiff must have both standing and capacity to bring a lawsuit. Coastal Liquids
Transp. L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880, 884 (Tex. 2001). The
general test for standing in Texas requires that there (1) shall be a real controversy
between the parties, which (2) will be actually determined by the judicial declaration sought. 
See Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex. 1996)
(citing Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)). 
Standing pertains to a person's justiciable interest in a suit and is a component of
subject-matter jurisdiction. See Tex. Air Control Bd., 852 S.W.2d at 443, 445–46. A
controversy is justiciable only if there exists a real and substantial controversy involving a
genuine conflict of tangible interests and not merely a theoretical dispute. See Bonham
State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995).
          A party has capacity to sue when it has legal authority to act, regardless of whether
it has a justiciable interest in the controversy. Nootsie, Ltd., 925 S.W.2d at 661. Capacity
is a party's legal authority to go into court to prosecute or defend a suit. El T. Mexican
Rests., Inc. v. Bacon, 921 S.W.2d 247, 249–50 (Tex. App.—Houston [1st Dist.] 1995, writ
denied). Capacity must be challenged by a verified pleading, or it is waived. Tex. R. Civ.
P. 93; see Pledger v. Schoellkopf, 762 S.W.2d 145, 145–46 (Tex. 1988) (contention that
corporation rather than plaintiff shareholder owned fraud and tortious interference claims
challenged capacity to sue and was waived); Spurgeon v. Coan & Elliott, No. 11-04-00050-CV, 2005 WL 2090673, at *2 (Tex. App.—Eastland Aug. 31, 2005, no pet. h.); Southwest
Indus. Inv. Co. v. Berkeley House Investors, 695 S.W.2d 615, 617 (Tex. App.—Dallas
1985, writ ref'd n.r.e.).
Analysis
          R & R first contends the court erred by concluding it was not a proper party to the
action. Its argument is not based on the merits, but on an alleged procedural shortfall. 
R & R contends the court could not find it was not a proper party to the suit because Jones
did not file a verified answer disputing its capacity to sue. 
          R & R is correct in stating that the rule requires a party to complain about a lack of
capacity with a verified denial. Tex. R. Civ. P. 93. However, the rule goes on to provide
that a verified pleading is not required when the truth of the matter appears in the record. 
Id. This is based on the concept that a party could provide evidence at the trial
affirmatively showing it was not the party in interest, when that might not be apparent from
the pleadings. 
          Preservation
          Jones initially argues waiver of the waiver, because R & R failed to object or
otherwise complain to the court when Jones first raised this issue in his motion for a
directed verdict. Jones' contention is correct. The requirement to use a verified pleading
to raise this issue is a procedural matter, required by rule, and complaints about pleadings
may be waived if a complaint is not promptly raised by the aggrieved party. Tex. R. Civ.
P. 90 ("Every defect, omission or fault in a pleading . . . which is not specifically pointed out
by exception in writing and brought to the attention of the judge . . . shall be deemed to
have been waived . . . ."); see Burks v. Yarbrough, 157 S.W.3d 876, 879 n.1 (Tex.
App.—Houston [14th Dist.] 2005, no pet.).
          Even if the rule controlled, however, it is not applicable to this argument. As framed
before the Court, this is not an issue of the entity's capacity to bring suit, but of its
possession of a justiciable interest in the lawsuit, i.e., standing. 
          Standing
          Standing implicates a court's subject-matter jurisdiction and cannot be waived. 
Nootsie, Ltd., 925 S.W.2d at 662. The court's findings and conclusions show it concluded
that R & R was not the aggrieved party, but that White was the one with the justiciable
interest. The question, therefore, is whether a real controversy existed between R & R and
Jones that would be determined by the judicial declaration sought, i.e., whether R & R has
standing; not whether it has the legal authority to act and therefore has the capacity to sue. 
See id. at 661. 
          Standing is a component of subject-matter jurisdiction and may be raised at any
time. Tex. Air Control Bd., 852 S.W.2d at 445–46; Antonov v. Walters, 168 S.W.3d 901,
904 (Tex. App.—Fort Worth 2005, pet. denied). A party's standing to pursue a cause of
action is a question of law, and we apply a de novo standard of review to the trial court's
determination regarding standing. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928
(Tex. 1998); Emmett Props., Inc. v. Halliburton Energy Servs., Inc., 167 S.W.3d 365, 371
(Tex. App.—Houston [14th Dist.] 2005, pet. denied). An appellant may not challenge a
trial court's conclusions of law for factual insufficiency; however, the reviewing court may
review the trial court's legal conclusions drawn from the facts to determine their
correctness. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); 
Templeton v. Dreiss, 961 S.W.2d 645, 656 n.8 (Tex. App.—San Antonio 1998, pet.
denied).
          R & R attacks the conclusion of law; it does not, however, argue evidentiary
sufficiency as to this contention. The evidence reflects that, at some point, White's
advisors created a plan to protect White's assets from possible creditors. In that plan,
Crown's remaining assets were transferred to an entity called Equichase Limited, a limited
partnership described by White as "the main entity that owns the assets of the family." 
R & R was set up as the general partner of Equichase. Thus, the question is: Did R & R
have standing, as the general partner of Equichase, to bring suit? 
          Generally, except as provided by the Limited Partnership Act, or a partnership
agreement, a general partner of a limited partnership has the rights and powers and is
subject to the restrictions of a partner in a partnership without limited partners. Tex. Rev.
Civ. Stat. Ann. art. 6132a-1, § 4.03(a) (Vernon Supp. 2005). A partnership may sue or be
sued in the partnership name—and a partner may individually sue for the benefit of the
partnership and other partners. See Tex. R. Civ. P. 28; Chien v. Chen, 759 S.W.2d 484
(Tex. App.—Austin 1988, no writ); 57 Tex. Jur. 3D Parties § 14 (1997); 57 Tex. Jur. 3D
Partnerships § 242 (1997). 
          The more specific question in the instant case is: Did Equichase, through its
general partner R & R, or did R & R separately, have standing to bring this lawsuit as
alleged?
          The trial court specifically found that the action as set out was personal to White and
was not one belonging to the partnership(s). There was evidence that White personally
instigated the transactions, that he personally transferred the properties, that he personally
set out the requirements for resale, and that he personally demanded sale and resale in
accord with the terms of their oral and written agreements. It is also apparent that, at the
time of the initial transactions in issue, the real estate properties were under the legal
ownership of Crown. 
          The written agreement with Jones, however, does not require sale back to a
corporation, or to a partnership (either limited or otherwise). It explicitly requires Jones to
sell the properties described "back to ROBERT WHITE at a fair profit within two years from
the date of this AGREEMENT, the profit not to exceed $100,000.00." 
          In its finding of fact number 18, the trial court found that White was the proper party
plaintiff and that there was no evidence the "arrangement" was legally and properly
assigned to the plaintiff named in the lawsuit and that the two properties not sold from "the
property" (the three real estate properties involved) were conveyed back, not to the named
plaintiff, but to Patrick White, White's son. The court found there was also a claimed
personal loss on stock investments, but nothing that illustrated the account, no partnership
agreement, and no agreement defining the responsibilities of the parties. 
          R & R contends that, because family assets were ultimately placed into Equichase,
the cause of action was necessarily transferred as well. To recover under the theory that
a cause of action was assigned to another party, the party claiming the assigned rights
must prove that the cause of action was in fact assigned. Ceramic Tile Int'l, Inc. v.
Balusek, 137 S.W.3d 722, 724 (Tex. App.—San Antonio 2004, no pet.); Exxon Corp. v.
Pluff, 94 S.W.3d 22, 28 (Tex. App.—Tyler 2002, no pet.); Tex. Farmers Ins. Co. v. Gerdes,
880 S.W.2d 215, 217 (Tex. App.—Fort Worth 1994, writ denied). 
          There is no testimony or documentary evidence that the cause of action was in fact
assigned, or even that its existence was ever acknowledged. There was testimony about
the completely personal nature of the transaction, and about the manner in which the
property was actually transferred pursuant to the personal agreement, and documentary
evidence that the properties were to be transferred not to an assignee, or to a partnership,
but to White. 
          Accordingly, applying a de novo review as required, from the pleadings and
evidence presented to the court, we conclude the trial court's conclusion of law that R & R
was not the proper party is supported by the evidence that R & R had no justiciable interest
in the lawsuit, and that there is not conclusive proof to the contrary. Thus, it had no
standing to bring this lawsuit, and the trial court correctly so held. 
Conclusion
          In light of the fact that Jones did not appeal, this analysis disposes of the appeal,
and we find it unnecessary to address the remaining points of error brought by R & R. 
          We affirm the judgment.



                                                                Donald R. Ross
                                                                Justice

Date Submitted:      December 14, 2005
Date Decided:         January 10, 2006