**Jose Luis LOPEZ, Appellant,**

v.

**Amy Elizabeth LOPEZ, Appellee.**

**No. 10–07–00002–CV.**

Court of Appeals of Texas,
Waco.

Aug. 13, 2008.*

---

* The majority opinion, dated August 13, 2008, was withdrawn.

Russell A. Smith, Waco, TX, for Appellant.

Damon L. Reed, Reyna & Reed LLP, Waco, TX, for Appellee.

## DISSENTING OPINION

GRAY, Chief Justice.

This appeal presents an extraordinary opportunity to clarify legal sufficiency reviews (as well as other issues) in civil cases in Texas.

What makes this case unique is that we are presented with a witness's testimony that used both a label and a description of a transaction. The witness described the transaction and the surrounding circumstances. The witness also testified that the transaction was not a "loan" and that it was a "gift." The question upon which this appeal turns is whether, and under what circumstances, the label used by a witness will control over and above the witness's description of the transaction. I believe the Court errs in giving conclusive effect to the witness's use of one label and ignoring the description of the transaction in that analysis, and then rejecting the same witness's use of another label in deference to her testimony about the description of the transaction.

This appeal also presents the opportunity to clarify the appellee's burden on appeal. The issue is what must an appellee do to prevail on appeal if, as the defendant in the trial court, the appellee won a take nothing judgment. The confusion comes from the oft cited phrase describing the standard of review that where findings of fact and conclusions of law are not available, as in this appeal, the appellate court must affirm the judgment on any theory finding "support" in the record. *In Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.

1984). I believe this standard of review is being inverted in this appeal to put a burden on the *appellee*, rather than the *appellant*. The Court is requiring the *appellee* to show that there is no theory, whether raised at trial by the plaintiff or not, under which a judgment for the plaintiff is proper. In this regard, the Court errs.

I respectfully dissent.

### PROCEDURAL HISTORY

Jose Lopez sued his former sister-in-law, Amy Lopez, for the conversion of a receipt or $15,000. Jose failed to convince the trial court, acting as the factfinder, that Amy had converted either the receipt or cash. The trial court, instead, opined that based on the evidence the transaction was a loan and that because the loan was not in writing, the recovery was barred by the statute of frauds. Thus, the trial court rendered a take nothing judgment. Jose appealed. The evidence was both legally and factually sufficient to "support" the trial court's refusal to find a conversion; therefore, the trial court did not err in rendering a take nothing judgment.

### BACKGROUND

Jose's brother, Wenceslao Lopez, who at the time was also Amy's husband, was being held by the INS (the United States Immigration and Naturalization Service). A $15,000 bond [1] was required for his release. Amy and Wenceslao did not have the money. Ultimately, Jose handed Amy $15,000 in cash and, according to Amy, said, "let's go get my brother." They rode together to San Antonio where Wenceslao was being held. Because Jose had concerns about the INS also detaining him, he had Amy attempt to deliver the cash to the

---

1. The term "bond" is used by the parties. It is unclear from the record whether this mon- ey was really a bond or was the amount of bail set to secure Wenceslao's release.

INS. The INS would not accept cash. A cashier's check, rather than cash, was needed. Jose went to a bank he used and converted the cash to a cashier's check and gave it to Amy. Amy posted the bond using the cashier's check and obtained a receipt in her name. The receipt allowed the person who posted the bond to be paid the amount of the bond once the INS case against Wenceslao had concluded. In the final analysis, it is the proof, or lack thereof, to show the characterization of the legal nature of the foregoing described events that should control the result of this appeal.

The next year, Amy and Wenceslao were going through a divorce. Wenceslao attempted to get Amy to sign what she assumed was the paperwork to let Jose collect the bond money. Amy refused unless her husband would drop his claim for custody of the children. He would not. The disposition and/or ownership of this money was discussed during a mediation of the property division during the divorce. It was not, however, specifically dealt with in the divorce decree; but the decree awarded to Amy all the money in her possession and control.[2] Amy later asked her divorce lawyer what she should do

with the money. She was advised that the money was hers. About six months after the divorce, Amy sent the necessary paperwork to the INS, which sent her a check for $15,000. Amy spent the money on bills and private school tuition for at least one of her children.[3]

An issue about the money did not arise again until Jose filed a motion to show cause in San Antonio. The case was transferred to McLennan County where Jose filed a petition for a constructive trust. Although Jose pled only for a constructive trust, the theory of conversion was tried to the court by consent. The trial court rendered a take nothing judgment. No findings of fact or conclusions of law were filed.[4]

## SUFFICIENCY OF THE EVIDENCE

This was a non-jury trial, in which no findings of fact or conclusions of law were filed; therefore, it is implied that the trial court made all the necessary findings, if any, to support its judgment. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989); *Goodyear Tire and Rubber Co. v. Jefferson Constr. Co.*, 565 S.W.2d 916, 918 (Tex. 1978). When a reporter's record is brought forward, as in this case, these

**2.** The Court makes much that neither the cash nor the receipt was listed as an asset in the inventory in connection with Amy and Wenceslao's divorce. They do not indicate the source of the inventory or who prepared it or who was responsible for its accuracy. If the omission of the receipt or cash has any significance, I note that likewise, the debt was not listed. Wenceslao was aware of the issue at the time of the divorce. His attorney, who testified at trial that he was aware of the issue of the bond money, drafted the divorce decree. If there was a debt owed, it should have been listed as well. This provides an inference that the debt had been paid by Wenceslao to his brother, Jose, and is supported by the testimony of Amy. Wenceslao was in the hall during trial but was not called as a witness. Amy certainly could not be expected to call him as a witness since he was

a "hostile" witness because the Attorney General was pursuing him for failure to pay Amy child support. We are left to wonder, if he had not paid Jose back, why Jose would not call him as a witness to bolster Jose's story.

**3.** Wenceslao was not consistently paying child support. It appears that this proceeding against Amy was brought at the same time the Attorney General was pursuing Wenceslao for this unpaid child support.

**4.** Jose requested findings of fact and conclusions of law, but when the trial court did not file the findings or conclusions, Jose did not file a "Notice of Past Due Findings of Fact and Conclusions of Law." *See* TEX.R. CIV. P. 297.

implied findings may be challenged by factual sufficiency and legal sufficiency points the same as jury findings or a trial court's findings of fact. *Roberson*, 768 S.W.2d at 281; *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980).[5] In the absence of findings, it is an appellant's burden to show that the trial court's judgment was not supported by any legal theory raised by the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987). Thus, in this appeal, Jose has the burden to show that the trial court's refusal to render judgment in his favor was not supported by the legal theory, conversion of the receipt or the money, raised by the evidence he presented and the theory on which the judgment was sought.

Further, we must be mindful that, to prevail on appeal, Jose must establish that the trial court's implied *refusal* to find that Amy converted the receipt or the money, the facts necessary to render judgment in his favor, was against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001). The factfinder, in this proceeding the trial court, may choose to believe some, all, or none of a witness's testimony if a reasonable juror could. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex.2005). In this regard, Jose's credibility was impeached by a felony conviction for criminal conspiracy involving forging documents. Because it was Jose's burden to prove his case by a preponderance of the evidence, the factfinder does not have to have any evidence in support of a refusal to find in Jose's favor. A refusal to find in favor of the party with the burden of proof, Jose, means only that the evidence failed to rise to that level necessary to cause the factfinder to determine more

likely than not that Jose's claim should be sustained on the theory being presented. *See Herbert v. Herbert*, 754 S.W.2d 141, 145 (Tex.1988). If the trial court did not believe Jose's testimony, he could disregard it entirely. The trial court's statement that he thought the transaction was a loan, which was directly contrary to Jose's testimony, establishes that the trial court did not find Jose a credible witness.

### Conversion of Receipt

Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex.1997); *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971). The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion. *Waisath*, 474 S.W.2d at 447.

Jose suggests that Amy's refusal to surrender the receipt or sign documents to allow him to be paid the money was conversion of the receipt as a matter of law. He argues that these refusals show that Amy exercised dominion and control over Jose's personal property—the receipt—to the exclusion of or inconsistent with his rights. There was no showing, however, that the receipt belonged to Jose. Both Jose and Amy testified that the receipt from the INS was in Amy's name because she was the one who delivered the cashier's check to the INS for her husband's bond. When asked if he ever requested the receipt from Amy, Jose responded that he asked her to either get the money and give it to him, or sign the papers necessary for him to be paid the money. He did not say that he asked her for the receipt. And

**5.** The Supreme Court in *Roberson* reversed and remanded the case to the court of appeals for failing to consider the appellant's factual sufficiency issues when it considered only the evidence favorable to the implied findings and disregarded any contrary evidence.

to the extent a request for the receipt could be inferred, there was no showing that at that time Amy was still in possession of it so that she would have been exercising dominion and control over it to the exclusion of anyone.

Reviewing the record under the appropriate standards of review, the trial court's refusal to find a conversion of the receipt was not against the great weight and preponderance of the evidence, and conversion of the receipt was not established as a matter of law.

### Conversion of $15,000

Jose also argues that Amy's refusal to surrender the actual money was a conversion of money. An action for the conversion of money may be brought where money is (1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper. *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774–75 (Tex.App.–Houston [14th Dist.] 1981, writ ref'd n.r.e.); *see Southwest Industries Inv. Co. v. Berkeley House Investors*, 695 S.W.2d 615, 617 (Tex.App.–Dallas 1985, writ ref'd n.r.e.).

Jose contends that the money was delivered through Amy to the INS for safe-keeping and meets the other requirements for an action for conversion.[6] But there is no evidence in the record that the money was a specifically identifiable fund which Amy was supposed to segregate and later return as an intact fund. Both Amy and Jose agreed that they had no discussions about whether the money was a gift or a loan or about how the money was to be returned to Jose, if at all.

Money is inherently fungible. *See Texas Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 461 (Tex.1997); *Dikes v. Springtown State Bank*, 84 S.W.2d 544, 545 (Tex.App.–Ft. Worth 1935, writ dism'd). There was evidence that Jose had been repaid by Wenceslao before the divorce was final. If Jose had been repaid by his brother, not only does it show that there was not a segregated fund that needed to remain intact, it shows that Amy had a claim to the funds as well.

Reviewing the record under the appropriate standards of review, the trial court's refusal to find a conversion of the money was not against the great weight and preponderance of the evidence, and conversion of the money was not established as a matter of law.[7]

Jose's first two issues should be overruled.

### STATUTE OF FRAUDS/LIMITATIONS

In his third issue, Jose contends the trial court erred in applying the statute of frauds or the statute of limitations because those defenses were not affirmatively pled. Specifically, he complains that Amy's supplemental answer raising the defenses was not timely filed.

There is nothing in the *judgment* that indicates the trial court applied the statute of frauds or the statute of limitations, and, as previously noted, no findings of fact or conclusions of law were filed. The trial court did, however, state from the bench that "under my analysis of this, I think your cause of action [for breach of a loan agreement] would be barred under the Statute of Frauds." But, oral comments

---

**6.** This is contrary to Jose's own testimony that it was a cashier's check, not $15,000 money, that Amy delivered to the INS. Jose never expected to receive the cashier's check back. He knew it was being delivered to the INS.

**7.** This is also ample evidence from which a loan could be inferred by the fact finder, *i.e.*, the trial court. *See* fn. 11.

from the bench are not written findings of fact. *In re Jane Doe 10*, 78 S.W.3d 338, 340 n. 2 (Tex.2002); *In the Interest of W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984). Having no findings that the trial court applied the statute of frauds or the statute of limitations, and based upon my disposition of the appeal on another ground, we would not need to decide Jose's third issue. Further, the statute of frauds defense is only applicable to the breach of a loan agreement, a theory Jose expressly disavowed, did not plead, and which he tried to avoid.[8]

## THEORIES NOT ARGUED /BURDEN OF PROOF

Where the Court goes astray is reviewing theories *not* argued by Jose. I have searched the briefs of both parties and find no use of the term "bailment" or citation or argument of this theory. I do not recall it being part of the oral arguments made to the Court. It is a theory advanced by no one other than the Court in its opinion. I cannot hold that a trial court reversibly erred based on a conclusion made by this Court on appeal that the evidence "points to" some other possible theory that was never presented to the trial court or even to the appellate court by the parties.

From my review of the proceedings, it seems pretty clear that the trial court determined that regardless of the legal mechanism under which the money was used by Jose's brother, whether it was a gift, a loan[9], or a trust fund of some type, Jose failed to establish that he had not been repaid. If the Court is going to point out other possible legal issues, like bailment, maybe we should question why Jose did not make his brother a party. After all, like a loan, liability for the breach of the "bailment" will be a joint and several liability of the community estate; *i.e.* his brother will bear the same liability as Amy.[10]

The fundamental problem with relying on theories not argued is that the Court has, I believe inadvertently, shifted the burden on appeal to the party who did not have the burden of proof at trial and who has secured a take nothing judgment as a result of that trial. When examined closely, the Court's opinion reveals that it is requiring the party who was the defendant at trial, who won a take nothing judgment, to show that the facts presented to the factfinder do not support any legal theory upon which a judgment for the plaintiff could be based. As an appellate court we should not shift the burden on appeal to the prevailing party at trial to show on appeal that there is no theory, including untried theories, which could support a judgment for the plaintiff. In this appeal, the Court holds that because bailment, a theory argued by no one at trial or on appeal, might allow the otherwise unsuccessful plaintiff to prove a conversion of

---

**8.** I believe the discussion of the limitation defense in the Court's opinion is also marred with mistakes about its application. The relevant demand by Jose was made no later than the divorce proceedings during mid–2003. The suit for conversion was not brought until July of 2006. The limitation period for conversion is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon Supp.2007).

**9.** From the trial court's comments, he was definitely indicating that he thought the transaction was a loan and, as such, had rejected

any other theory whether being proffered by Jose or not.

**10.** Further, I note the theory of bailment is fundamentally flawed. Bailment is the holding of property for a purpose after which it is returned. *See D & D Assoc., Inc. v. Sierra Plastics, Inc.*, 570 S.W.2d 205, 207 (Tex.Civ. App.-Waco 1978, no writ). There is no question Jose did not expect Amy to return the cashier's check to him. That check was used for the bond payment necessary to secure his brother's release.

the bailed property, the case must be remanded for a new trial. I believe that is an erroneous placement of the burden on appeal resulting in an improper reversal.

## CONCLUSIVE TESTIMONY

### (AKA THE ERRONEOUS RELIANCE ON LABELS)

I began this opinion with expressing my belief that this appeal presents an extraordinary opportunity to further clarify this Court's method of conducting a sufficiency review. I now return to that argument.

What makes this the perfect opportunity to clarify the legal sufficiency review required under *City of Keller* is that the Court has determined what seems to be diametrically opposed rulings while parroting the *City of Keller* standard for such a review. The Court has held that by using the label "loan," the witness, Amy, has conclusively negated that the transaction was a loan by her testimony that it was not a loan. The Court states:

> Amy's testimony alone conclusively establishes that the transaction was not a loan.

\* \* \*

To the extent the trial court impliedly found that Amy lawfully possessed the INS receipt or its $15,000 cash proceeds because Jose had loaned her the money, no evidence supports that implied finding because a reasonable factfinder could not disregard Amy's testimony that the transaction was not a loan. *See City of Keller*, 168 S.W.3d at 807.

Thus, the Court has concluded that by her testimony that the transaction *was not*

a loan; a reasonable factfinder could not have concluded it was a loan. As additional support, the Court references the testimony of Jose that the transaction was not a loan. But remember, we are looking only for *some* evidence, legally sufficient evidence, that the transaction was, in fact, a loan.

I completely disagree that Amy's testimony "conclusively establishes that the transaction was not a loan." Even if I agreed, of what relevance to our review is this statement? What does it mean? Amy's testimony using the label "loan" was only part of the evidence about the transaction and her conclusory testimony, such as by the use of a label which has legal significance, is not conclusive proof of the fact to be established. Further, other testimony conflicts with the "conclusive" testimony that it was not a "loan." There was other testimony from which the characterization of the transaction as a loan would be proper.[11]

But the intriguing analysis about the conclusive effect of using labels comes, not from another case, but from the very same case, and not another witness, but from the very same witness. Amy also testified that the transaction *was* a "gift." With regard to this testimony, the Court concludes that, notwithstanding her use of the label that the transaction was a "gift," a reasonable factfinder could not have concluded that the transaction was a gift. In this regard, the Court states:

> On cross-examination, Amy testified that Jose never told her that the money was a gift. She never expressed any thanks to Jose for giving her the money, and

11. For example, Jose testified that he had made numerous loans to his brother. All were without any documentation; nevertheless, he expected to be repaid by his brother. All such loans had been repaid. Likewise, the delivery of $15,000 to Amy for Jose's broth-

er's benefit was without documentation and there was testimony that it too had been repaid; sure looks like a loan to me. A transaction such as this is defined by the facts of the transaction, not the legal label the parties may later try to apply to it.

she did not think the money was a gift until she discovered that money was missing from her bank account during her divorce. Amy's assumption that Jose gave her the money as a gift is not evidence of Jose's donative intent. Viewing Amy's testimony about why and when she determined that the money was a gift in the light favorable to the trial court's implied finding of a gift, a reasonable factfinder could not have credited Amy's testimony as evidence of a gift. *See City of Keller*, 168 S.W.3d at 807.

I disagree that the evidence conclusively proves the transaction was not a gift.

So, based upon Amy's description of the transaction, and comparing it to the labels to attempt to summarize her own testimony and give a legal characterization to the transaction, the Court has told us that a reasonable factfinder could not have *rejected* her testimony that it was not a "loan," but could not have *believed* her testimony that it was a "gift." I find neither conclusion compelling because the Court is too focused on the label applied to the transaction by the witness and not on an analysis of what the testimony about the nature of the transaction would support. But *again*, of what relevance is Amy's failure to prove something on which she did not have the burden of proof?

In this regard, the Court states that the testimony of Amy conclusively proves the transaction was not a loan. But her testimony is internally inconsistent between the nature of the transaction and the label she sought to apply to it. It reminds me of the old saying that if it walks like a duck, looks like a duck, and quacks like a duck, it is a duck—no matter what you call it.[12]

So will we review labels applied by parties who have an interest in characterizing the legal consequences of a transaction? Do we simply accept these conclusory statements, the label, without looking behind them to the true nature of the transaction as described by the witness? I vote to reject considering only the witness's use of a conclusory label and suggest that we must examine the true nature of the transaction as testified to by all the witnesses. We must consider the totality of the evidence. After all, this witness was not a lawyer and was not shown to know the difference between a loan, a gift, or a bailment. Therefore, the witness was not qualified to use a label that has now been given a conclusive legal meaning by this Court. This is particularly true when the legal label she used was in conflict with her other testimony about the nature of the transaction.

Further, these were theories that were not even being tried at the trial court level as such and that Amy, the trial court victor and as appellee, did not know she needed to brief or defend against on appeal. Now the Court is not only remanding this proceeding for a new trial but also is handcuffing the defendant by purporting to conclusively decide on appeal theories that would have been improper even for the trial court to decide. Thus, the Court is going to make the parties retry the case and prevent the parties, in particular the defendant/appellee, from being able to show the true nature of the events. This is because the Court is deciding that at least two theories, loan and gift, are con-

12. Likewise, William Shakespeare's line from *Romeo and Juliet* is frequently twisted to explain the same concept; a rose by any other name is still a rose. The line is actually "What's in a name? That which we call a rose By any other name would smell as sweet." WILLIAM SHAKESPEARE, *Romeo and Juliet*, in SHAKESPEARE THE COMPLETE WORKS, Act II, sc. ii, 43–44, p. 484, (G.B. Harrison, ed., Harcourt Brace Jovanovich, Inc., 1968).

clusively negated by *this* record, *i.e.*, the above-described testimony applying the above-described standard of review. It appears irrelevant to the Court that other evidence may be introduced at the next trial by the party who should have had no burden at trial or on appeal which may clarify or explain the evidence presented in the earlier proceeding. At the very least, if no theories are off limits on retrial, in essence that the law-of-the-case doctrine does not apply to any claim or defense, we should clearly and unequivocally state that so the parties are not confused and re-sources needlessly consumed briefing and arguing the issue of what it is the Court intended by its judgment and opinion.

## CONCLUSION

This was Jose's case to win or lose. He lost. He did not convince the factfinder, the trial court, of the merits of his chosen theory of recovery, conversion. As an ap-pellate court, we should not select some other theory on which he might prevail if retried. The trial court's judgment should be affirmed. Because it is not, I respect-fully dissent.