# NO. 12-13-00035-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *AARON JORDAN, MICHAEL JORDAN, HEATHER JORDAN, GILBERT JORDAN, PHYLLIS ANN WOODS AND DONNA JOYCE CURTIS,* | § | *APPEAL FROM THE 402ND* |
| *APPELLANTS* | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *CYNTHIA KAY LYLES,* | | |
| *APPELLEE* | § | *WOOD COUNTY, TEXAS* |

## *OPINION ON REHEARING*

Cynthia Kay Lyles has filed a motion for rehearing, which is overruled. We withdraw the opinion dated December 10, 2014, and substitute the following opinion in its place.

Aaron Jordan, Michael Jordan, Heather Jordan, Gilbert Jordan, Phyllis Ann Woods, and Donna Joyce Curtis appeal the trial court's judgment notwithstanding the verdict entered in favor of Cynthia Kay Lyles. In two issues, Appellants argue that the trial court erroneously rendered judgment notwithstanding the jury's verdict and, alternatively, the evidence supports the jury's verdict for interference with inheritance rights. We reverse and render.

## BACKGROUND

Melvin "Bud" Jordan and Joy Jordan married in the late 1960s. Both had children prior to their marriage to one another. Bud's three children are Harold Jordan, Gilbert Jordan, and Melvin Jordan Jr. Melvin, Jr. also had three children—Aaron Jordan, Michael Jordan, and Heather Jordan. Joy's children are Donna Curtis, Phyllis Woods, Cynthia "Cyndi" Lyles, Johnny Lyles, and Lynda Lyles. Cyndi lived with Bud and Joy from an early age and, by all

accounts, had a very close relationship with Bud. On the other hand, Bud was estranged from his sons until they reconciled on his seventieth birthday in 1983.

In 2001, Bud and Joy executed wills that were, in pertinent part, identical to one another. By their wills, each left his or her estate to the other. In the event the decedent was not survived by a spouse, one-half of his or her estate would pass to the decedent's own children and one-half to the decedent's spouse's children. The wills further provided that if any child predeceased the decedent, that deceased child's share would go to the child's surviving descendants. On or about March 15, 2004, Bud executed a codicil changing the disposition of his estate in the event Joy predeceased him. Under the codicil, Bud left one-half of his estate to his two then-living sons as follows: 20% to Gilbert and 80% in trust to Melvin Jr. with Cyndi serving as trustee.

Joy died on December 14, 2004. The next day, Bud signed a power of attorney form appointing Cyndi as his attorney in fact.

In late January 2006, Bud executed change forms making Cyndi the sole beneficiary of three annuities worth in excess of $249,000. Cyndi filled out portions of the forms at Bud's direction and mailed them to the respective financial institutions after Bud signed them.

On February 25, 2009, Melvin Jr. died. Two days later, Bud, who had been ill, signed a new power of attorney form appointing Cyndi as his attorney in fact. That same day, Cyndi drove Bud to Bank Texas, where Bud and Melvin Jr. had maintained a joint money market account. Because Bud could not go inside due to his catheter, a bank employee came out to the car to assist him. As he sat in the car, Bud signed a form making Cyndi a joint account holder with right of survivorship.[1]

On March 1, 2009, Bud died. Cyndi used her beneficiary designations and right of survivorship to withdraw approximately $275,000 from Bud's annuities and bank accounts. Bud's probate estate comprised less than $30,000 in assets.

On February 25, 2011, Appellants filed the instant suit against Cyndi for breach of fiduciary duty and interference with inheritance rights.[2] The matter proceeded to a jury trial. After considering the evidence, the jury determined that Cyndi failed to comply with her fiduciary duty to Bud and tortiously interfered with Appellants' inheritance rights. As a result,

---

[1] Cyndi was previously listed on the account as a pay on death (POD) beneficiary.

[2] Appellants' cause of action for breach of fiduciary duty was added by an amended pleading.

the jury awarded Appellants $156,016 in compensatory damages and $50,000 in exemplary damages.

Thereafter, Cyndi moved for judgment notwithstanding the verdict. On January 2, 2013, the trial court conducted a hearing on her motion. On January 14, 2013, the trial court granted Cyndi's motion and rendered judgment that Appellants take nothing by their suit. This appeal followed.

<u>**STANDING**</u>

In her brief, Cyndi challenges Appellants' standing to assert their claim for breach of fiduciary duty. A plaintiff must have both standing and capacity to bring a lawsuit. *Coastal Liquids Transp. L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001); *R&R White Family Ltd. P'ship v. Jones*, 182 S.W.3d 454, 457 (Tex. App.–Texarkana 2006, no pet.). Standing is implicit in the concept of subject matter jurisdiction, which is essential to the authority of a court to decide a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Subject matter jurisdiction is never presumed and cannot be waived. *Id.*

Whether a court has subject matter jurisdiction is a question of law. *Hendee v. Dewhurst*, 228 S.W.3d 354, 366 (Tex. App.–Austin 2007, pet. denied). The determination of whether a trial court has subject matter jurisdiction begins with the pleadings. *Id.* The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* Whether the pleader has met its burden is a question of law that we review de novo. *Id.* When an appellate court questions jurisdiction for the first time on appeal, it must construe the petition in favor of the party, and, if necessary, review the entire record to determine if any evidence supports standing. *Tex. Air Control Bd.*, 852 S.W.2d at 446.

The general test for standing in Texas requires that there (1) shall be a real controversy between the parties, which (2) will be actually determined by the judicial declaration sought. *See Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) (citing *Tex. Air Control Bd.*, 852 S.W.2d at 446). Standing pertains to a person's justiciable interest in a suit and is a component of subject matter jurisdiction. *See Tex. Air Control Bd.*, 852 S.W.2d at 443, 445–46. A controversy is justiciable only if there exists a real and substantial controversy

3

involving a genuine conflict of tangible interests and not merely a theoretical dispute. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).

Cyndi argues that any fiduciary duty she owed was personal to Bud and, as a result, his heirs lack standing to sue on his behalf. Ordinarily, to recover for breach of fiduciary duty, the plaintiff must establish the defendant was the plaintiff's fiduciary. *See Myer v. Cuevas*, 119 S.W.3d 830, 836 (Tex. App.–San Antonio 2003, no pet.). Moreover, if an estate is pending, an heir does not have standing to sue on behalf of the estate because the estate's personal representative generally has the exclusive right to bring such suits. *See Shepherd v. Ledford*, 962 S.W.2d 28, 31–32 (Tex. 1998); *Protho v. Zapata*, 157 S.W.3d 832, 839 (Tex. App.–Fort Worth 2005, no pet.). However, there are exceptions to this general rule. For instance, an heir, rather than the estate's personal representative, may sue to recover estate property[3] when the heir pleads and proves that there is no estate administration pending and none is necessary. *See Shepherd*, 962 S.W.2d at 31–32; *Zapata*, 157 S.W.3d at 839. Moreover, when an estate administration has been closed, an heir can file suit to recover property of the estate. *See Giddings v. Steele*, 28 Tex. 732, 732 (1866).

Here, Appellants did not plead that there is no estate administration pending and none is necessary. But we stress that when we consider jurisdictional questions for the first time on appeal, if necessary, we must review the entire record to determine if any evidence supports standing. *See Tex. Air Control Bd.*, 852 S.W.2d at 446.

Turning to the record before us, we note that it contains an order admitting Bud's will and codicil to probate as a muniment of title. This order contains the express finding that there are no unpaid debts owing by the estate and there is no necessity for administration of the estate. For the purpose of determining whether Appellants' have standing in this case, the trial court's order admitting Bud's will and codicil to probate as a muniment of title is the functional equivalent of the closing of an independent administration. *Compare* TEX. ESTATES CODE ANN. § 257.001 (West 2014) *with* TEX. ESTATES CODE ANN. § 405.004 (West 2014).[4] Accordingly, we

---

[3] A potential cause of action is part of a decedent's estate. *See Mariner Health Care v. Robins*, 321 S.W.3d 193, 200–01 (Tex. App.–Houston [1st Dist.] 2010, no pet.).

[4] Section 257.001 was formerly codified as Texas Probate Code, Section 89C(a). Section 405.004 was formerly codified as Texas Probate Code, Section 151(a). Because the language pertinent to our analysis here remains the same, we cite the recodified sections for ease of reference.

4

hold that Appellants have standing as heirs to sue Cyndi for breach of fiduciary duty.[5]  *See Steele*, 28 Tex. at 732; *see also Shepherd*, 962 S.W.2d at 31–32; *Zapata*, 157 S.W.3d at 839.

**CHALLENGE TO JUDGMENT NOTWITHSTANDING THE VERDICT**

In their first issue, Appellants argue that the trial court erred in granting Cyndi's motion for judgment notwithstanding the verdict on their breach of fiduciary duty claim.

## Standard of Review

A trial court may grant a judgment notwithstanding the verdict if there is no evidence to support one or more of the jury findings on issues necessary to liability.  *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 513 (Tex. 1998).  To determine whether there is no evidence to support the jury verdict and, thus, uphold the judgment notwithstanding the verdict, we view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Tiller*, 121 S.W.3d at 713; *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001).  If more than a scintilla of evidence supports the jury's findings, the jury's verdict and not the trial court's judgment must be upheld.  *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). Absent an objection to the charge, we conduct our sufficiency review in light of the charge as given, even if that charge misstates the law or imposes a more rigorous burden of proof on a party than is required by the law.  *See Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 220–21 (Tex. 2005).

## Governing Law

The elements of a breach of a fiduciary duty claim are (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of her fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach.  *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.–Houston [14th Dist.] 2008, pet. denied).  A power of attorney creates an agency relationship, which is a fiduciary relationship as a matter of law.  *Vogt v. Warnock*, 107 S.W.3d 778, 782 (Tex. App.–El Paso 2003, pet. denied); *In re Estate of Miller*, No. 12-12-00363-CV, 2014 WL 3970766, at *7 (Tex. App.–Tyler Aug. 3, 2014, no pet.) (op., not yet released for publication).

---

[5] In her brief, Cyndi specifically asserts that she does not challenge Appellants' capacity to sue.

A fiduciary owes her principal a strict duty of good faith and candor, as well as the general duty of full disclosure respecting matters affecting the principal's interests. *See* ***Lesikar v. Rappeport***, 33 S.W.3d 282, 296 (Tex. App.–Texarkana 2000, pet. denied). All transactions between a fiduciary and her principal are presumptively fraudulent and void; therefore, the burden lies on the fiduciary to establish the validity of any particular transaction in which she is involved. *Id.* at 298. Moreover, where a fiduciary relationship exists, the burden is on the fiduciary to show that she acted fairly and informed the principal of all material facts relating to the alleged transaction. *See id.* (citing ***Hoggett v. Brown***, 971 S.W.2d 472, 487 (Tex. App.– Houston [14th Dist.] 1997, pet. denied)). Even in the case of a gift between parties with a fiduciary relationship, equity indulges the presumption of unfairness and invalidity, and requires proof at the hand of the party claiming validity of the transaction that it is fair and reasonable. ***Estate of Townes v. Townes***, 867 S.W.2d 414, 417 (Tex. App.–Houston [14th Dist.] 1993, writ denied). In establishing the fairness of a transaction involving a fiduciary, some of the most important factors are (1) whether there was full disclosure regarding the transaction, (2) whether the consideration, if any, was adequate, and (3) whether the beneficiary had the benefit of independent advice. *Id.*

**The Charge**

We again note that, absent objection, we conduct our sufficiency review in light of the charge as given. *See* ***Romero***, 166 S.W.3d at 220–21. In the instant case, the court's charge instructed the jury on breach of fiduciary duty as follows:

> You are instructed that the Defendant, CYNTHIA KAY LYLES, was in a fiduciary relationship with the Decedent, MELVIN "BUD" JORDAN, from December 14, 2005, the date of Joy's death, through the date of Bud's death on March 1, 2009. Under Texas law, a fiduciary owes its principal a high duty of good faith, fair dealing, honest performance, and strict accountability. A fiduciary must fulfill her duties with reasonable care, diligence, and good faith, and judgment, and if she fails to do so, she will be liable to [the] principal for the resulting damage. There is a general prohibition against the fiduciary's using the relationship to benefit her personal interest, except with the full knowledge and consent of the principal.

Question 1, which pertains to the issue of fiduciary duty, reads as follows:

**Question No. 1**

> Did CYNTHIA KAY LYLES comply with her fiduciary duty to MELVIN "BUD" JORDAN?

Because a relationship of trust and confidence existed between them, CYNTHIA KAY LYLES owed MELVIN "BUD" JORDAN a fiduciary duty. To prove she complied with her duty, CYNTHIA KAY LYLES, must show:

a. the transaction(s) in question were fair and equitable to MELVIN "BUD" JORDAN; and

b. CYNTHIA KAY LYLES made reasonable use of the confidence that MELVIN "BUD" JORDAN placed in her; and

c. CYNTHIA KAY LYLES acted in the utmost good faith and exercised the most scrupulous honesty toward MELVIN "BUD" JORDAN; and

d. CYNTHIA KAY LYLES placed the interest of MELVIN "BUD" JORDAN before her own, did not use the advantage of her position to gain any benefit for herself at the expense of MELVIN "BUD" JORDAN, and did not place herself in any position where her self-interest might conflict with her obligations as a fiduciary . . . .

Answer "Yes" or "No":

The jury answered in the negative, and Cyndi has not raised any cross issues on appeal challenging the court's charge.[6] As a result, given the wording of the charge, the jury's finding must be upheld as long as there is more than a scintilla of evidence that Cyndi failed to comply with her fiduciary duty to Bud in any one transaction. *See Townes*, 867 S.W.2d at 417.

**Breach of Fiduciary Duty - Annuities**

Much of the relevant evidence admitted at trial pertained to the three annuities from ING, AIG, and Metlife.[7] The record reflects that the annuities were established by Joy, who listed Bud as the primary beneficiary and Cyndi as the contingent beneficiary. The record further reflects that after Joy died and Cyndi became Bud's fiduciary, Bud had to elect whether to take a lump sum payment of the annuities or exercise a spousal continuation, i.e., step into Joy's shoes as an account holder. Cyndi testified that in January 2006, she assisted Bud in completing the

---

[6] *See, e.g.*, **Crown Life Ins. Co. v. Casteel**, 22 S.W.3d 378, 389–90 (Tex. 2000) (when single broad form liability question erroneously commingles valid and invalid liability theories, error is harmful when it cannot be determined whether improperly submitted theories formed sole basis for the jury's finding); *see also* TEX. R. CIV. P. 324(c); TEX. R. APP. P. 38.2(b)(1).

[7] Two of the remaining accounts at Wood County National Bank were established in the early 1990s, long before Cyndi entered into a fiduciary relationship with Bud. At the time of their creation, Cyndi was listed as a joint account holder with Joy and Bud and had right of survivorship in the accounts. Based on our review of the record, there is no evidence that Cyndi was involved in any transactions pertaining to these accounts during the period of her fiduciary relationship with Bud. There is also evidence concerning a Bank Texas money market account, wherein Bud changed Cyndi's status from pay on death beneficiary to joint account holder with right of survivorship. As a result of our analysis pertaining to the three annuities, we do not consider whether Cyndi breached her fiduciary duty to Bud in the Bank Texas transaction.

7

forms to exercise a spousal continuation in the three annuities. These forms were admitted as exhibits. On each of the forms, Cyndi is designated as the primary beneficiary of the respective annuity. Cyndi further testified that anything she wrote on the forms was done at Bud's direction and in his presence. Cyndi stated that she did not coerce Bud into making her a beneficiary. Nonetheless, there is no evidence that Cyndi or anyone else specifically discussed these transactions with Bud and informed him of all material facts pertaining to them. *See id.*

## Cyndi's Responsive Arguments

In her brief, Cyndi raises several arguments in support of the trial court's judgment notwithstanding the jury's verdict. We will address each of these arguments in turn.

### *Vogt v. Warnock*

Cyndi first argues that the court of appeals' holding in *Vogt* supports the trial court's judgment notwithstanding the jury's verdict here. In that case, Dr. Warnock named Vogt, his much younger fiancé, his attorney in fact under a power of attorney. *See Vogt*, 107 S.W.3d at 780. Thereafter, he revoked a living trust that he and his late wife had established for their son, transferred four pieces of real property to Vogt, and named Vogt the beneficiary of his brokerage account and veteran's life insurance policy. *See id.* Later, Warnock prepared a codicil to his will, by which he left furniture, household goods, jewelry, and personal effects to Vogt, while making a number of specific bequests of a sentimental nature to his son. *See id.* at 780. An attorney/friend assisted Warnock and consulted with him on several occasions in making these changes to his estate plan to "insure that [he] understood and desired these transfers." *Id.* Following Warnock's death, the representative of his estate sued Vogt for breach of fiduciary duty. *See id.* at 781. The jury determined that some of the transfers to Vogt were "fair," while others were not fair.[8] *See id.* at 782. The court of appeals held that the evidence was uncontroverted that Warnock did what he wanted to do in transferring his property to Vogt, that he was competent at the time the transfers were made, and that Vogt did not exercise undue influence upon him to accomplish the transfers. *See id.* at 785.

Here, Cyndi argues that the evidence of record closely resembles the evidence before the court in *Vogt*, and, therefore, conclusively establishes that the transactions at issue were fair to

---

[8] The jury was instructed that "by the term 'fair' is meant transactions characterized by frankness, honesty, impartiality or candor; open, upright, reasonable, free from suspicion or bias; equitable, just; affording no undue advantage."

Bud.  However, there is no indication that the jury in *Vogt* was instructed that transactions involving a fiduciary and her principal require proof of "full knowledge and consent" by the principal.  *See Townes*, 867 S.W.2d at 417.  Even so, in *Vogt*, there was very specific evidence that Warnock consulted numerous times with an attorney concerning the disposition of his estate.  *See Vogt*, 107 S.W.3d at 785.  Moreover, the court noted that Warnock's primary physician signed an affidavit stating that Warnock was able to perform the transfers and understood the consequences of his actions.  *See id.*  Accordingly, we conclude that facts of *Vogt* are distinguishable from the facts in the case at hand.  The fact remains in this case that Cyndi failed to meet her burden of proving that she or anyone else specifically discussed the transactions at issue with Bud and informed him of all material facts relating to them.

### *Acts not Undertaken in Fiduciary Capacity*

Cyndi next asserts that her role was akin to that of a scrivener and there is no evidence that she acted under her power of attorney.  In *Vogt*, the appellant made a similar argument that she could not have breached her fiduciary duty when there was no evidence that she used her power of attorney in some way.  *See id.* at 778.  The court of appeals disagreed, stating that a fiduciary's duty to her principal should be viewed by a "stringent standard undiluted by exceptions."  *See id.*  We, too, decline to dilute Cyndi's fiduciary duty with such an exception.[9]

### *"Transactions"*

Cyndi further argues that the relevant transactions were between Bud and the various financial institutions and, as a beneficiary, she was not a party to these transactions.  Thus, she contends that there was no need to measure the fairness of Bud's transactions with the financial institutions and the jury's answer to Question 1 is rendered immaterial as a result.  The term "transaction" means "a business agreement or exchange" or a "[c]ommunication involving two or more people that affects all those involved."  THE AMERICAN HERITAGE COLLEGE DICTIONARY 1435 (3rd ed. 1997).  Although the communications initiating the transactions at issue were between Bud and the various financial institutions, by the broad common meaning of the term, Cyndi was nonetheless involved in these transactions.

Even assuming arguendo that Cyndi was not involved in the transactions at issue, this scenario would not render the jury's finding that Cyndi did not comply with her fiduciary duty to

---

[9] We again note that the jury was instructed that Cyndi had a fiduciary duty to Bud during a fixed time period.  Cyndi has not raised any issues on appeal challenging the trial court's charge.

Bud immaterial as Cyndi suggests. Indeed, if Cyndi had objected to the court's charge on these grounds, she may have been successful in convincing the trial court that Question 1 should not place the burden of proof on her. *See **Navigant Consulting, Inc. v. Wilkinson***, 508 F.3d 277, 295 (5th Cir. 2007) (where there is no transaction between fiduciary and principal, there is no presumption of unfairness, and burden of proof does not shift to fiduciary). But because Cyndi has not raised any issue on appeal concerning the court's charge, her argument concerning her involvement in the transactions at issue is of no consequence. *See **Romero***, 166 S.W.3d at 220-21.

### *"Benefitting" from the Transactions*

Finally, Cyndi argues that, ultimately, she did not benefit from her change in status by Bud's making her the primary beneficiary on the annuities where, before, she had been a secondary beneficiary, when he executed the spousal continuation forms. We disagree.

The term "benefit" is defined as "an advantage." THE AMERICAN HERITAGE COLLEGE DICTIONARY 127 (3rd ed. 1997). An "advantage" is a "relatively favorable position." *Id.* at 19. Here, as a result of Bud's transactions, Cyndi remained the only person who would receive the funds therein upon his death. Her contention that she would have received these funds even had the status quo been maintained is novel. But, with regard to the annuities, there were only two scenarios—Bud could take a lump sum payment or he could step into Joy's shoes by executing a spousal continuation form. In either of these scenarios, the previous designations were of no further effect. Thus, when Bud again made Cyndi a beneficiary of the annuities, she benefitted.

## Summation

In sum, the record contains no evidence that Cyndi or anyone else specifically discussed any of these three transactions with Bud and informed him of all material facts relating to the transactions. As a result, Cyndi failed to meet her burden of proving that she complied with her fiduciary duty to Bud. Because she failed to meet her burden, we hold that the trial court erred in granting Cyndi's motion for judgment notwithstanding the verdict. Appellants' first issue is sustained.[10]

---

[10] Having sustained Appellants' first issue, we do not consider their second issue concerning whether the judgment can be upheld in accordance with the jury's affirmative finding on Question 2 pertaining to whether Cyndi tortuously interfered with their inheritance rights. *See* TEX. R. APP. P. 47.1.

**RESPONSIVE ARGUMENT CONCERNING CAUSATION AND INJURY**

In her third responsive argument in her brief, Cyndi argues that there is no evidence that Bud or Appellants "suffered any recoverable damage." Specifically, with regard to the annuities, she contends that the documents reflect Bud's intent and, thus, there can be "no credible proof of a recoverable damage." She further contends,

> [T]here was never any time that any other person or entity besides Cyndi (or Bud) was named [as] a beneficiary. At the outset, when Joy was [the] owner, Cyndi was the beneficiary in the event that Bud died before Joy. And upon Joy's death, when Bud exercised the policy rights of spousal continuation (electing to defer payoff until Bud's death), Bud then simultaneously designated Cyndi, not Bud's estate as beneficiary.

Cyndi's motion for judgment notwithstanding the verdict pertained only to the jury's response to Questions 1 and 2, which concerned the issues of whether Cyndi breached her fiduciary duty to Bud or tortiously interfered with Appellants' inheritance rights. She also made an alternative motion with regard to Questions, 4, 5, and 6, which pertained to exemplary damages. The jury determined whether Cyndi's breach caused an injury in its response to Question 3. Her motion makes no reference to this damages question. The trial court granted Cyndi's motion and rendered its judgment notwithstanding the verdict that Appellants take nothing. Because Cyndi did not bring forward a cross point on this ground, she has waived her complaint. *See* TEX. R. APP. P. 38.2(b)(1) (failure to bring cross point on issue that would vitiate verdict or prevent affirmance of judgment waives complaint); TEX. R. CIV. P. 324(c) (same).

In her motion for rehearing, Cyndi further develops her third responsive argument and suggests that we construe it as a cross point. We first note that the sole purpose of a motion for rehearing is to provide the appellate court an opportunity to correct any errors on issues already presented. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 560 (Tex. App.–Tyler 2007, pet. denied). The presentation of Cyndi's third responsive argument bears little resemblance in clarity and thoroughness to her extensive presentation in her motion for rehearing. In contrast, her third responsive argument makes a series of seemingly reiterative factual assertions and contains no citation to authority or to the record. *See* TEX. R. APP. P. 38.1(i); *Harris v. Archer*, 134 S.W.3d 411, 447 (Tex. App.–Amarillo 2004, no pet.) (holding that cross point was inadequately briefed for failure to cite authority). This is not a simple matter of "mislabeling." And though we have attempted to construe Cyndi's third responsive argument liberally, that

principle is not without its limitations.  Thus, we decline to characterize her third responsive argument as a cross point.  *See* TEX. R. APP. P. 38.2(b)(1); TEX. R. CIV. P. 324(c).

## DISPOSITION

Having sustained Appellants' first issue, we *reverse* the trial court's judgment and *render* judgment in accordance with the jury's verdict.

JAMES T. WORTHEN
Chief Justice

Opinion delivered January 30, 2015.
*Panel consisted of Worthen, C.J. and Hoyle, J.*

(PUBLISH)