

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00078-CV

———————————————

NEIL COLLINS, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF
CONTEMPORARY RESEARCH CORPORATION, Appellant

V.

ROBERT SCOTT HETZLER, CONTEMPORARY RESEARCH CORPORATION,
CR ASSEMBLY CORPORATION, CR SOURCE CORPORATION, AND
MARIANNE MICHELLE ZACCARO A/K/A MARIANNE MICHELLE
HETZLER, Appellees

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 20-1857-16

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

This is an appeal of a jury's take-nothing decision in a derivative suit brought by a shareholder of Contemporary Research Corporation (CRC) for alleged breaches of corporate duty surrounding the corporate founder's divorce.[1] Appellant Neil Collins challenges the jury's answers to two questions on grounds of legal and factual sufficiency. Because sufficient evidence supported the jury's verdict, we will affirm.

## I. BACKGROUND

Appellee Robert Scott Hetzler founded CRC in 1993 and has remained the majority shareholder, president, and chairman of the company ever since. CRC designs, sells, and installs electronic audio-video products for multiple-monitor public display systems like airport arrival and departure boards or sports bar televisions.

Collins and Hetzler had worked together at another company before 1993 and had become friends, so Hetzler hired Collins as one of the first employees and vice president of CRC in 1994. With the job offer, Hetzler offered Collins stock as a longevity incentive that would vest once Collins had worked for CRC for two years. Collins received the promised incentive and has owned shares of CRC since 1996.

When Hetzler founded CRC, he did not have a marketing plan. In 2001, when he decided CRC needed a business plan and with CRC's sales lagging, he hired

---

[1]This appeal stems from a suit filed by a single shareholder on his own behalf and derivatively on behalf of CRC against the corporation's founder and the corporation itself. He also sued a former employee of CRC and two related corporations of which he is not and has never been a shareholder.

Appellee Marianne Michelle Zaccaro, whom he had known since his college days, as marketing director. She and Hetzler married in 2002.

Collins left CRC in 2002, but he maintained ownership of his shares. Since his departure in 2002, Collins contacted Hetzler about selling his shares or requesting financial information about CRC approximately six times. Hetzler responded to Collins's emails but did not share formal financial reports.

With the new business plan in 2002, CRC contracted with an accounting firm. In 2007, the firm helped Hetzler and Zaccaro form another company, Appellee CR Source, wholly owned by Zaccaro. CR Source was founded to prevent CRC having to pay additional payroll taxes on bonuses to Hetzler and Zaccaro and to create a vehicle through which Zaccaro could receive payments for her consulting services. Shortly after 2007, separate from her direct employment with CRC, Zaccaro began providing marketing services to CRC and accepting payment through CR Source.

Zaccaro and Hetzler separated in 2011. Zaccaro resigned as an employee of CRC and ceased to draw a salary, but she continued to provide marketing services to CRC through CR Source and to receive payments for those services. Zaccaro and Hetzler finalized their divorce in 2013. The details were set out in a thirteen-page decree.

Under the decree, Hetzler was ordered to pay Zaccaro $900,000 to ensure a just and right division of the couple's assets. The decree reflects that the $900,000 award "represent[ed] [Zaccaro's] community interest in . . . [CRC]." In the decree, Zaccaro

acknowledged that she had already received $500,000 of this $900,000 award by virtue of payments in 2011 and 2012.[2] The remaining $400,000 was to be paid in $200,000 installments in December 2013 and December 2014.

Though not reflected in the decree, Zaccaro agreed that Hetzler could credit the amounts that CRC paid her (via CR Source) for her consulting work against the $900,000 award. Zaccaro received consulting fees totaling $300,000 in 2011 and received $200,000 in consulting fees each year from 2012 to 2014. Under the parties' informal agreement, these fee payments from CRC to CR Source fully satisfied Hetzler's $900,000 debt.

In exchange for the $900,000 in total payments, Zaccaro waived all claims against CRC and released any ownership claims in CRC. Although Zaccaro had not filed suit against CRC, Hetzler believed she had claims that were sufficiently colorable that their release was a benefit to CRC. Zaccaro believed she could have filed claims against CRC seeking an ownership interest, and Hetzler believed that a lawsuit filed by Zaccaro would have been costly and ultimately harmful to CRC.

As another part of the divorce decree, Hetzler kept four pieces of real property from the community estate and Zaccaro kept one.[3] Hetzler also released all ownership of and claims against CR Source.

---

[2]As discussed below, the $500,000 that Zaccaro had received in 2011 and 2012 was actually compensation for consulting work that she had done for CRC.

[3]In his brief, Collins asserts that these properties were unencumbered. The only evidence in the record indicates that each of the five properties was encumbered

In 2014, CRC acquired the assets of a supplier of electronic parts it used in its business and created a subsidiary company, appellee Contemporary Research Assembly Corporation (CR Assembly), to continue to supply CRC. Zaccaro provided consulting services in negotiating the deal for the acquisition. CRC announced the acquisition to its employees and released a public statement to media outlets. Hetzler did not send Collins a personal notice or email about the acquisition. Zaccaro worked as a manager of CR Assembly and continued providing consulting and marketing services to CRC, paid through CR Source.

In 2014, Collins requested access to CRC's Quickbooks application, which Hetzler denied, instead offering to "share some financial info like a public company might, but not just open books." In 2018, Collins responded to that 2014 email from Hetzler denying Quickbooks access and expressly demanded a profit and loss statement, income statement, cash flow statement, balance sheet, and tax filing for the previous five years. Hetzler agreed to provide the information but asked Collins to sign a nondisclosure agreement as a condition. Collins refused. Hetzler ultimately provided Collins with financial information at CRC's November 2018 shareholder meeting, the first it had ever held, without requiring him to sign a nondisclosure agreement.

---

with a mortgage, assumed by the spouse who took ownership of the respective property.

Since its inception, CRC has had few shareholders[4] and an informal approach to shareholder relations. Hetzler did not send regular financial statements or communication to the shareholders. Hetzler did not distribute a formal financial overview to any shareholder for the first 25 years of operations, until the company's first shareholder meeting. However, Hetzler informally responded to requests for information, and shareholders other than Collins stated that they felt that they had sufficient access to information.

At the inaugural shareholder meeting, Collins learned several details of the functioning of CRC for the first time. The meeting was the first time Collins learned about the formation of CR Assembly. Based on information he learned in the meeting, Collins conducted a pre-litigation deposition of Hetzler.

In the process of the deposition, Collins also learned of Hetzler's and Zaccaro's divorce and Zaccaro's ongoing business relations with CRC. After their divorce in 2013, Zaccaro had continued to provide consulting and advertising services for CRC and CR Assembly through CR Source in the same manner and on the same terms that had already been established. Both Zaccaro and Hetzler believed that Zaccaro was providing reasonable services for the consulting fees paid.

Collins filed a suit individually and as a shareholder of CRC, naming Hetzler, CRC, CR Source, and CR Assembly as defendants, and later adding Zaccaro as a

---

[4]At the time of trial, the four shareholders of CRC were Collins, Hetzler, Gwendolyn Williams, and Ellen Long. Zaccaro is not, and has never been, a shareholder of CRC.

6

defendant in his first amended petition. Collins alleged that Hetzler had breached his fiduciary duties and that the other defendants aided and abetted the breach and financial improprieties. After a jury trial, the court entered a take-nothing judgment in favor of the defendants.

## II. ANALYSIS

At the end of the trial, the jury answered two questions, both in the negative: (1) did Hetzler profit or benefit from a transaction with CRC or place himself in a position of conflict between his self-interest and his fiduciary duties? and (2) did Hetzler breach his fiduciary duties to CRC? The answer to the first question was preliminary to determine and place the burden of proof for the second. Collins challenges the legal and factual[5] sufficiency of the jury's findings as to these questions.

### A. THE LEGAL SUFFICIENCY STANDARD OF REVIEW

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn*

---

[5]Collins provides no analysis as to factual sufficiency other than a recitation of the applicable standard and a conclusory statement. Collins's motion for new trial similarly omitted authority or analysis for factual sufficiency. Although the briefing and preservation was only arguably sufficient, we "hesitate to resolve cases based on procedural defects and instead endeavor to resolve cases on the merits," and so we presume without deciding that factual sufficiency is before the court. *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020).

*v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, however, the party must overcome two hurdles. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). First, the record must be examined for evidence that supports the jury's finding, while ignoring all evidence to the contrary. *Id.* Second, if there is no evidence to support the jury's answer, then we must examine the record to determine whether the evidence establishes, as a matter of law, all vital facts in support of the contrary proposition. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021); *Sterner*, 767 S.W.2d at 690. To conclusively establish a fact, the evidence must leave "no room for ordinary minds to differ as to the conclusion to be drawn from it." *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019).

In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner*, 767 S.W.2d at 690). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)); *Dow Chem. Co.*, 46 S.W.3d at 241. If no evidence supports the finding, then we will

8

examine the entire record to determine if the contrary position is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241. We will sustain the issue only if the contrary position is conclusively established. *Id.* Evidence conclusively establishes a fact when the evidence leaves "no room for ordinary minds to differ as to the conclusion to be drawn from it." *Lufkin Indus., LLC*, 573 S.W.3d at 235.

Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003). More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Gunn*, 554 S.W.3d at 658. On the other hand, no more than a scintilla exists when the evidence offered to prove a vital fact is so weak that it creates no more than a mere surmise or suspicion of its existence. *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 397 (Tex. 2019); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Argument depending upon recitation of evidence favorable to one party without accounting for contrary evidence the jury heard or the jury's role in resolving conflicts is not consistent with sufficiency review. *Hrdy v. Second St. Props. LLC*, 649 S.W.3d 522, 539 (Tex. App.—Houston [1st Dist.] 2022, pets. denied).

Without an objection to the jury charge, we review evidentiary sufficiency in light of the charge submitted. *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 & n.30 (Tex. 2005).

9

## B. THE FACTUAL SUFFICIENCY STANDARD OF REVIEW

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Factual-insufficiency issues depend on who has the burden of proof at trial. *See Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ). Accordingly, when the party *without* the burden of proof on a fact issue complains of an adverse fact finding, that party must show that "insufficient evidence" supports the finding; that is, that the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of contrary credible evidence. *Id.*; *see Garza*, 395 S.W.2d at 823; W. Wendell Hall & Ryan G. Anderson, *Standards of Review in Texas*, 50 St. Mary's L.J. 1099, 1134–35 n.203 (2019). When the party *with* the burden of proof appeals from a failure to find, the party must show that the failure to find is against the great weight and preponderance of the credible evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006).

## C. LAW ON BREACH OF FIDUCIARY DUTY

The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty between the parties; (2) a breach by the defendant of his fiduciary duty to the plaintiff; and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *Gilbreath v. Horan*, 682 S.W.3d 454, 523 (Tex. App.—Houston [1st Dist.] 2023, pets. denied) (op. on reh'g) (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017)). In general, to recover for a breach of fiduciary duty, the plaintiff has the burden of proving each element. *Gilbreath*, 682 S.W.3d at 523.

As regards the first element, Hetzler does not challenge Collins's prima facie case or Collins's right to bring this derivative action as a shareholder of CRC, as it is well established that corporate directors and officers owe the corporation a fiduciary duty, and shareholders may bring such actions. *Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014); *see* Tex. Bus. Orgs. Code Ann. § 21.551(1) (defining a shareholder derivative proceeding as a civil suit brought in the right of the corporation).

As regards the second element, directors of corporations owe fiduciary duties of obedience, loyalty, and due care to the corporation, dedicating their "uncorrupted business judgment for the sole benefit of the corporation." *Ritchie*, 443 S.W.3d at 869–70 (quoting *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)).

As regards the third element—harm—a plaintiff must demonstrate that the fiduciary obtained a benefit for himself either at the expense of his principal or

11

without equally sharing the benefit with the principal. *See KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 83 (Tex. 2015) (holding that "essence" of self-dealing is fiduciary's misappropriating for itself what "would have been a shared benefit" with principal); *Mims-Brown v. Brown*, 428 S.W.3d 366, 374–75 (Tex. App.—Dallas 2014, no pet.) ("Self-dealing can be generally defined as an occurrence in which the fiduciary uses the advantage of his position to gain a benefit at the expense of those to whom he owes a fiduciary duty."); *see also Gillespie v. Hernden*, 516 S.W.3d 541, 555 (Tex. App.—San Antonio 2016, pet. denied) (concluding that plaintiff could not support claim of self-dealing by attorney when evidence conclusively proved that benefit to attorney was shared equally with clients).

To meet this burden in a claim for self-dealing, "a plaintiff must demonstrate that the fiduciary obtained a benefit for itself either at the expense of its principal or without equally sharing the benefit with the principal." *See Roels v. Valkenaar*, No. 03-19-00502-CV, 2020 WL 4930041, at *6 (Tex. App.—Austin Aug. 20, 2020, no pet.) (mem. op.) (citing *Bradshaw*, 457 S.W.3d at 83).

Although the plaintiff bears the initial burden to plead and prove a breach of fiduciary duty, courts employ a burden-shifting presumption of unfairness to transactions between a fiduciary and the party to whom he owes a duty. *Collins v. Smith*, 53 S.W.3d 832, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.). The presumption of unfairness arises when the plaintiff proves the fiduciary was an "interested" party in a transaction between a fiduciary and his principal and shifts the

burden to the fiduciary to show the fairness of the transaction. *Jordan v. Lyles*, 455 S.W.3d 785, 795 (Tex. App.—Tyler 2015, no pet.) (op. on reh'g) (citing *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 295 (5th Cir. 2007)).

The Texas Business Organizations Code does not define the term "transaction," so the word is to be "read in context and construed according to the rules of grammar and common usage." *See* Tex. Bus. Orgs. Code Ann. § 1.051; Tex. Gov't Code Ann. § 311.011(a). Black's Law Dictionary defines a transaction as "1. The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract. 2. Something performed or carried out; a business agreement or exchange." *Transaction*, Black's Law Dictionary (12th ed. 2024).

An officer is considered "interested" in a transaction if he (1) makes a personal profit from the transaction by dealing with the corporation or usurps a corporate opportunity, (2) buys or sells assets of a corporation, (3) transacts business in his official capacity with a second corporation of which he is also an officer or director or is significantly financially associated, or (4) transacts corporate business in his official capacity with a family member. *Loy v. Harter*, 128 S.W.3d 397, 407–08 (Tex. App.—Texarkana 2004, pets. denied) (op. on reh'g) (citing *Landon v. S & H Mktg. Grp., Inc.*, 82 S.W.3d 666, 673 (Tex. App.—Eastland 2002, no pet.)). Whether an officer or director is interested with respect to a particular action is a question of fact. *Landon*, 82 S.W.3d at 673.

## D. JURY CHARGE

The trial court structured the jury charge to place the burden of proof on the appropriate party. An affirmative answer to the first question would have shown that the jury found that Collins had met the burden to show that Hetzler had engaged in a transaction with CRC. It is well established that "when a plaintiff alleges self-dealing by the fiduciary as part of the breach-of-fiduciary-duty claim, a presumption of unfairness automatically arises, which the fiduciary bears the burden to rebut." *Cluck v. Mecom*, 401 S.W.3d 110, 114 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Houston v. Ludwick*, No. 14-09-00600-CV, 2010 WL 4132215, at *7 (Tex. App.—Houston [14th Dist.] Oct. 21, 2010, pet. denied) (mem. op.)). The burden would then require Hetzler "to prove (a) that the questioned transaction was made in good faith, (b) for a fair consideration, and (c) after full and complete disclosure of all material information to the principal." *Jackson Law Off., P.C. v. Chappell*, 37 S.W.3d 15, 22 (Tex. App.—Tyler 2000, pet. denied) (citing *Stephens Cnty. Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974)).

Per the jury instructions, if the jury answered question one—whether Hetzler benefitted from a transaction with CRC—in the affirmative, it was to answer jury question two. The instructions to jury question two went on, "[the] burden of proof is on the fiduciary when the fiduciary has profited or benefited from a transaction with the beneficiary or has placed himself in a position in which his self-interest might conflict with the beneficiary." This instruction would have placed the burden of

proof on Hetzler, if the jury answered question one in the affirmative. *See Jordan*, 455 S.W.3d at 795.

The jury instructions for question one further directed the jury not to answer question two if it answered question one in the negative, but rather to continue on to question three. The instructions for question three contained no burden-shifting language and so left the burden with Collins, as plaintiff, to prove Hetzler breached his fiduciary duties. *See Smith*, 53 S.W.3d at 840.

### E. LEGAL AND FACTUAL SUFFICIENCY AS TO JURY QUESTION ONE

Jury question one asked: "Did [Hetzler] profit or benefit from a transaction with [CRC], or place himself in a position in which his self-interest might conflict with his obligations as a fiduciary to [CRC]?" The jury answered, "No."

### 1. Legal Sufficiency

The transaction implicated in the pleadings in this case is Zaccaro's and Hetzler's 2013 divorce decree. Collins characterizes the decree as a "tri-party agreement" among Hetzler, Zaccaro, and CRC. This characterization is contingent upon Collins's contention that the divorce decree contained a provision that CRC, not Hetzler, would pay money owed by Hetzler to Zaccaro. However, that requirement is not part of the terms of the decree.

CRC and CR Source were, at most, third-party beneficiaries of the decree and were not signatories to or directly ordered to take or refrain from any action by the

15

decree. CR Assembly is not implicated by the decree or the subsequent, informal credit arrangement at all.

Collins's theory hinges upon the credit agreement between Hetzler and Zaccaro comprising part of the divorce decree. However, there is evidence that the consulting agreement predated the divorce decree and constituted part of the original purpose of the formation of CR Source.

Because there is more than a scintilla of evidence indicating that Hetzler did not engage in a transaction with CRC or cause CRC to pay Zaccaro money directly or through CR Source that she would not already have been owed, the evidence supporting the jury's finding that Hetzler did not profit from a self-dealing transaction is legally sufficient. *See Hrdy*, 649 S.W.3d at 539–40.

Collins argues that the divorce decree placed Hetzler in a position in which his self-interest conflicted with his fiduciary obligations to CRC. Hetzler and Zaccaro both testified that all payments between CRC and CR Source were made in exchange for consulting services and provided fair value to both companies. Although Collins's argument characterizes the payments as having been made from CRC to Zaccaro on behalf of Hetzler, the record reflects more than a scintilla of evidence that the payments were made by CRC to CR Source in exchange for marketing services provided by Zaccaro under the ongoing agreement. Further, Zaccaro gave up her claims to any community interest in CRC, which could have constituted an additional debt and litigation expense for CRC, thereby placing an additional financial burden on

the company. Evidence was before the jury to show that structuring the divorce decree in this way also benefitted CRC by freeing it of the potential debt or expense of Zaccaro's community interests, while maintaining CRC's existing mutually beneficial business relationship with Zaccaro.

The jury could reasonably have found that CRC had no obligations under the decree because it was not a party to it and that Hetzler did not place himself in a position in which his self-interest conflicted with his fiduciary duties. *See Tex. Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 508–09 (Tex. 1980). Because there is more than a scintilla of evidence to support the jury's findings, we overrule the legal sufficiency argument presented in Collins's first issue. *Id.*

## 2. Factual Sufficiency

Collins, as plaintiff, bore the initial burden of proof and production as to the existence of a transaction between CRC and Hetzler. *See Frankoff v. Norman*, 448 S.W.3d 75, 85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Beck v. Law Offs. of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.)). Collins argues that there was overwhelming evidence that the presumption of unfairness shifted the burden of proof and production to Hetzler.[6] Collins argues

---

[6]In a footnote, Collins appears to object to the jury charge and its placement of the burdens of proof and persuasion but does not meaningfully brief this issue and did not raise the issue in an objection to the jury charge before the trial court. Because this issue was neither properly preserved nor briefed, we decline to address it. *See* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 272; *In re J.C.*, 594 S.W.3d 466, 473 (Tex. App.—Fort Worth 2019, no pet.).

that the divorce decree was a multi-party agreement between Hetzler, Zaccaro, CRC, and CR Source. In support of this proposition, he states that the divorce decree was structured such that any amounts paid to Zaccaro would be "credited" against Hetzler's personal liability to Zaccaro under the divorce decree and that "CRC (not Mr. Hetzler) would pay off the $900,000 owed to Ms. Hetzler."

The record reflects that the payments were part of an ongoing business arrangement. Both Hetzler and Zaccaro testified that the payments from CRC to CR Source were not those mandated under the divorce decree but rather were credited to Hetzler by Zaccaro of her own volition under a separate credit agreement. The text of the divorce decree also showed that it was between Hetzler and Zaccaro and that CRC and CR Source were not parties to it. Zaccaro testified that she and Hetzler made the credit arrangement to preserve the operation of CRC, so that it "could survive this divorce."

On appeal, Collins bears the burden to demonstrate that the evidence supporting the jury's finding was so contrary to the overwhelming weight of all the evidence that the finding should be set aside and a new trial ordered. *See Cain*, 709 S.W.2d at 176. There is factually sufficient evidence in the record to support the jury's rejection of Collins's theory. *See Moore*, 595 S.W.2d at 508–09.

Collins has not borne the burden to show that the jury's finding was so contrary to the overwhelming weight of evidence that it should be set aside, and so we overrule this issue. *See Cain*, 709 S.W.2d at 176.

**F. LEGAL AND FACTUAL SUFFICIENCY AS TO JURY QUESTION THREE**

Jury question three asked, "Did Defendant [Hetzler] fail to comply with his fiduciary duties to [CRC]?" The jury answered, "No."

### 1. Legal Sufficiency

The instructions in question three laid out the burden of proof that Collins had to meet and provided five avenues by which the jury could find Hetzler had breached his fiduciary duties to CRC:

> To prove [that Hetzler] failed to comply with his fiduciary duties, Plaintiff Neil Collins must show:
>
> 1. the transaction(s) in question was not fair and equitable to [CRC]; or[]
>
> 2. [Hetzler] did not make reasonable use of the confidence that [CRC] placed in him; or[]
>
> 3. [Hetzler] failed to act in the utmost good faith or exercise the most scrupulous honesty toward [CRC]; or[]
>
> 4. [Hetzler] placed his own interests before [CRC's] interests and used the advantage of his position to gain a benefit for himself in a position where his self-interest might conflict with his obligations as a fiduciary to [CRC]; or[]
>
> 5. [Hetzler] failed to fully and fairly disclose all important information to [CRC] concerning the transaction(s).

As already addressed herein, the record contains more than a scintilla of evidence that there was no transaction, fair and equitable or otherwise, directly between Hetzler and CRC with respect to the divorce payments to Zaccaro.

19

There is similarly more than a scintilla of evidence that Hetzler and Zaccaro structured their divorce to benefit CRC. Zaccaro provided services in exchange for the consulting fees paid from CRC to CR Source. She chose to credit Hetzler personally with the ongoing payments made by CRC to CR Source, even though he was personally liable to her for the debts listed in the divorce decree, in exchange for which she gave up any right to pursue ownership interest in CRC. The consulting fees paid from CRC to CR Source were debts owed by CRC, not Hetzler, under existing agreements for past provided and promised services by Zaccaro. Zaccaro freed CRC from the expense of litigating her community interest and charging it with the debt owed for her services while keeping her favorable business relationship; the arrangement benefitted CRC, Hetzler, and Zaccaro. Zaccaro and Hetzler stated that they structured the decree specifically to preserve CRC and advance its interests.

There is more than a scintilla of evidence that Hetzler met the duty to properly keep accounting and records. *See* Tex. Bus. Orgs. Code Ann. §§ 3.151–.153, 21.218; *Corpus Christi Bank & Tr. v. Roberts*, 587 S.W.2d 173, 180–81 (Tex. App.—Corpus Christi–Edinburg 1979), *aff'd*, 597 S.W.2d 752 (Tex. 1980). Hetzler relied on at least one outside firm to review financial decisions and taxation and accounting. Nothing in the record suggests that Hetzler was acting outside the "exercise of [his] discretion and judgment in the development or prosecution of the enterprise in which [his] interests are involved." *Sneed v. Webre*, 465 S.W.3d 169, 178 (Tex. 2015).

The record reflects that Hetzler did not fully disclose the details of his divorce decree to Collins until the pretrial discovery process. But, there is evidence that Hetzler disclosed or made available relevant financial information to CRC employees and to other shareholders and responded informally to specific requests for information. Beyond the duty to allow inspection of books and records for a proper purpose upon request, there is no statutory fiduciary duty for a director to send regular, formal reports to shareholders. Tex. Bus. Orgs. Code Ann. §§ 3.151–.153, 21.218; *see Bell v. Northside Auto Serv. Ctr., Inc.*, No. 04-03-00392-CV, 2004 WL 624583, at *2 (Tex. App.—San Antonio Mar. 31, 2004, no pet.) (mem. op.) (finding sufficient evidence to support a jury's finding of no breach of fiduciary duty when a fiduciary "was not trying to hide anything" and the plaintiff did not offer any evidence of fraud, misrepresentation, or intent to receive profits and benefits at the corporation's or shareholders' expense).

Hetzler declined Collins's request to access the company's financial software directly and offered general financial information instead. Four years later, when Collins responded to that email and requested specific financial information and stated a purpose for the request, information was provided shortly thereafter at the first shareholder's meeting. Shareholder Williams testified that financial reports and books and records were available upon request. Hetzler testified that it was his intent to make them available upon request. Hetzler testified that, between 1996 and 2014, Collins never asked to inspect the company financial information. Ellen Long,

another shareholder, testified that she had access to all the information she felt she needed.

Because there is more than a scintilla of evidence to support the jury's finding that Collins did not meet his burden, we hold that there is legally sufficient evidence to support the jury's answer to this question. *See Hrdy*, 649 S.W.3d at 539; *Bell*, 2004 WL 624583, at *2.

## 2. Factual Sufficiency

Under the same burden-shifting analysis applicable to jury question one, Collins bears the burden of proof on appeal to demonstrate factual insufficiency as to jury question three and must show that the finding was so contrary to the overwhelming weight of all the evidence that it should be set aside and a new trial ordered. *See Cain*, 709 S.W.2d at 176.

As previously noted, there is uncontested evidence that Hetzler did not hold shareholder meetings for the first 25 years of running the company and did not send regular, formal financial statements to shareholders. There is also evidence that Hetzler responded to requests for information from shareholders regarding the financial status of CRC, kept financial records and hired an accounting firm to perform financial tasks, and considered CRC's interests in crafting his divorce decree. Hetzler gained a benefit from his personal credit agreement with Zaccaro, a transaction that was related to payments to her by CRC through CR Source. But the payments also maintained an ongoing, favorable business relationship between the

22

company and Zaccaro and avoided burdening CRC with Zaccaro's potential community interest claims against CRC, benefitting CRC and Zaccaro as well as Hetzler.

When conducting a factual-sufficiency review, a court of appeals must not merely substitute its judgment for that of the jury. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Rather, the jury, as factfinder, is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.*

After considering and weighing all the pertinent record evidence, with due deference to the jury's role as factfinder, we determine that the credible evidence supporting the finding is not so contrary to the overwhelming weight of all the evidence that it should be set aside and a new trial ordered. *See Cain*, 709 S.W.2d at 176. We overrule Collins's second issue.

## III. CONCLUSION

Because we hold that there was both legally and factually sufficient evidence to support the jury's findings on both questions, we affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: March 27, 2025

23